1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALUESELLING ASSOCIATES, LLC, a California limited liability company; SALES VISION, LLC, a California limited liability company,<br><br>                          Plaintiffs,<br><br>     vs.<br><br>KEVIN TEMPLE, an individual; ENTERPRISE SELLING GROUP, form of entity unknown, and DOES 1 though 50, inclusive,<br><br>                          Defendants. | CASE NO. 09 CV 1493 JM<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO (1) COMPEL ARBITRATION AND (2) DISMISS CASE**<br><br>Doc. No. 4 |

On July 9, 2009, Plaintiffs ValueSelling Associates, LLC ("VSA") and Sales Vision, LLC ("SVL"), filed this complaint against Defendants Kevin Temple and Enterprise Selling Group ("ESG") alleging the following causes of action: (1) misappropriation of trade secrets, (2) common law misappropriation, (3) violation of California's unfair business practices act, Cal. Bus. & Prof. Code §§ 17200-17210, (4) trademark infringement, (5) violation of the Lanham Act, (6) copyright infringement, (7) trade libel, (8) intentional interference with prospective economic advantage, (9) breach of implied covenant of good faith and fair dealing, (10) unjust enrichment, and (11) alter ego. (Doc. No. 1).

09CV1493

1    On September 3, 2009, Defendants filed a motion for an order compelling
2  arbitration and dismissing the case, or in the alternative, staying the proceedings. (Doc.
3  No. 4). Defendants base their motion to compel arbitration on three contracts between
4  Plaintiffs and Defendant Temple, each containing arbitration clauses.

5    On September 25, 2009, Plaintiffs filed an opposition to Defendants motion to
6  compel arbitration arguing: (1) that the contracts containing the arbitration clauses cited
7  by Defendants do not relate to the claims being made in the complaint, and (2) the case
8  involves a third party (Defendant ESG) who was not a party to the contracts and is
9  therefore not subject to the arbitration provisions. (Doc. No. 6).

10    The court finds this matter appropriate for decision without oral argument. *See*
11  CivLR 7(d)(1). For the reasons set forth below, the court **GRANTS** Defendant's
12  motion to compel arbitration and dismiss the case.

13  **1.    BACKGROUND**

14    Plaintiffs VSA and SVL own certain propriety and copyrighted intellectual
15  property known as the ValueSelling Program. This program was initially created by
16  Lloyd Sappington who formed ValueSelling Systems, Inc. (VSSI) for purposes of
17  developing and operating a sales and delivery network for the ValueSelling Program.
18  (Doc. No. 1, hereinafter "Compl.," ¶ 29). On January 1, 1997, VSSI and Temple
19  formed ValueVision Associates ("VVA") which was licensed by VSSI to utilize VSSI's
20  intellectual property, including the ValueSelling Program. (Compl. ¶¶ 33, 35).

21    In June 2003, Plaintiffs acquired the ValueSelling Program when it purchased
22  VVA and other related assets, including all trademarked and copyrighted material, from
23  VSSI, Temple, and a third entity, Dialogue Management, Inc. (Compl. ¶ 36).
24  Plaintiffs' acquisition of VVA was governed by the "Purchase Agreement" containing
25  an arbitration provision. (Compl. ¶ 37). The provision signed by the parties governs
26  "[a]ny dispute, controversy, or questions arising under, out of or related to this
27  agreement or breach thereof." (Doc. No. 4, Def. Motion Ex. A, ¶ 11.4).

28    On July 9, 2003, Plaintiffs and Temple entered into a consultancy agreement

whereby Temple would act as a consultant for SVL with certain licensing rights to the programs and materials now owned by SVL in order to aid SVL in distributing its product. (Compl. ¶ 42). Pursuant to the agreement Temple was retained by SVL as an independent contractor for a period of three years at $200,000 per year. (Compl. ¶ 43). The "Consultancy Agreement" contained an arbitration provision stating, "[t]he parties agree, if any dispute arises concerning the interpretation and/or enforcement of the terms of this agreement, the dispute shall be resolved by binding arbitration." (Doc. No. 4, Def. Motion Ex. B, ¶ 9.4).

The relationship between Plaintiffs and Temple was ongoing until a dispute arose between the parties in July 2007. (Compl. ¶ 47). In December 2007, Plaintiffs and Temple reached a settlement to terminate their business relationship. (Compl. ¶ 48). The parties to the "Confidential Settlement Agreement" agreed to submit to arbitration, "[a]ny dispute, controversy, or question arising under, out of or relating to this Agreement or the breach thereof." (Doc. No. 4, Def. Motion Ex. C, ¶ 12)

## II.    DISCUSSION

### A.    Plaintiffs' Claims Are Subject to Arbitration

#### 1.    Legal Standard

There is a strong public policy presumption favoring arbitrability. *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983); *see AT & T Tech., Inc. v. Comm. Workers of Am.,* 475 U.S. 643 (1986); *United Steelworkers of Am., v. American Mfg. Co.,* 363 U.S. 464 (1960). In accordance with this policy, any doubts whether a dispute comes within an arbitration clause is resolved in favor of arbitration. The Supreme Court repeatedly and ardently reiterated this principal set forth in the Federal Arbitration Act ("FAA") noting that "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," arbitration should be compelled. *Moses, supra,* 460 U.S. at 24-25. "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion since the Act is phrased in mandatory

terms." *Republic of Nicaragua v. Standard Fruit Co.,* 937 F.2d 469, 475 (9th Cir. 1991). The Supreme Court has emphasized that the Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc., v. Bryd,* 470 U.S. 213, 218 (1985); *see also Howard Elec. & Mech. V. Briscoe Co.,* 745 F.2d 847, 849 (9th Cir. 1985). Such agreements shall be "rigorously enforce[d]." *Bryd,* 470 U.S. at 221. Only where there is a "definite showing" that the dispute in question is outside the arbitration clause should a court decline to compel arbitration. *See VAC Service Corp. v. Service Merch. Co., Inc.,* 929 F. Supp 143, 145 (S.D.N.Y. 1996).

Generally, in determining whether a given claim is subject to arbitration, a court must engage in a two part inquiry, first determining the breadth of the arbitration clause (whether it is broad or narrow), and then applying the relevant scope of the provision to the asserted legal claims to determine if they require arbitration. *See Simula, Inc., v. Autoliv, Inc.,* 175 F.3d 716, 720-726 (9th Cir. 1999). A clause providing for the arbitration of "any claim or controversy arising out of or relating to the agreement" has been held to be the paradigm of a broad clause. *Collins & Aikman Products Co., v. Building Systems, Inc.* 58 F.3d 16, 20 (2d Cir. 1995). The words "any disputes arising from or relating to this agreement" have been held to even include disputes not arising under the agreement, if the disputes have a "significant relationship" to the agreement. *Long v. Silver,* 248 F.3d 309, 316 (4th Cir. 2001). When the arbitration clause in a contract is broad, the strong presumption in favor of arbitration applies with even greater force. *See Leadertex Inc., v. Morganton Dyeing and Finishing Corp.,* 67 F.3d 20, 27 (2d Cir. 1995).

In determining whether a claim falls within the scope of the arbitration provision, a court will examine the factual allegations of the complaint rather then the legal causes of action asserted. *See Mitsubishi Motors Corp. v. Solor Chrysler-Plymouth, Inc.,* 473 U.S. 614, 633 n.9 (1985); *see also Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d

1   840, 846 (2d Cir. 1987).  Further, one cannot attempt to avoid an arbitration provision

2   by casting a claim as a tort.  *Building Systems, Inc.,* 587 F.3d at 22.

3               **2.    Analysis**

4       Plaintiffs allege eleven claims against Defendants consisting of various torts

5   involving the misappropriation of trade secrets and infringement of copyrighted and

6   trademarked material.  When analyzing the factual allegations in the complaint, every

7   claim targets material and programs, sold to Plaintiffs by Temple via the Purchase

8   Agreement, and subsequently misappropriated by Temple following the sale of his

9   rights in the company and the termination of his consultancy via the Settlement

10  Agreement.   Contained in both those agreements are broad arbitration clauses

11  demanding arbitration of, "[a]ny dispute, controversy, or question arising under, out of

12  or relating to" the respective contracts.  (Doc. No. 4, Def. Motion Ex. A ¶ 11.4; Ex. C

13  ¶ 12).  When appropriate, a court should dismiss claims that are arbitrable, while

14  retaining jurisdiction over any claims that fall outside the scope of the arbitration

15  provision.  Having analyzed the arbitrability of each of Plaintiffs' claims, the court

16  determines that all claims are subject to arbitration.

17              **a.    Trademark and Copyright Infringement Claims**

18      Plaintiffs allege Defendants are currently advertising and selling products with

19  very similar trademarks and service marks as those used by Plaintiffs.  Plaintiffs argue

20  Defendants intentionally adopted these marks to deceive the public as to the origin of

21  the products and induce buyers to purchase Defendants' products instead of Plaintiffs'.

22      Plaintiffs also allege that since 2007, Defendants have infringed on Plaintiffs'

23  copyrights by publishing, selling, and otherwise marketing course materials which have

24  been copied largely from Plaintiffs' course materials, including the Value Selling

25  Programs and the eExecutive ValueSelling Course. Plaintiffs also claim that Defendants

26  have inserted false copyright management information on publications of course

27  materials.

28      The dispute involving Defendants' use of Plaintiffs' trademarked and copyrighted

material is directly connected to Defendant Temple's status as former owner and licensee of the trademark and copyright material. At the same time the parties entered into the Purchase Agreement they also signed the Consultancy Agreement which noted that Defendant would have access to certain proprietary and confidential information and materials relating to Plaintiffs' business and that Defendant was prohibited from copying or otherwise using that material. Upon termination of Defendant Temple's consultancy with Plaintiffs' company, the parties signed the Settlement Agreement, which again set forth the parameters of the parties relationship and the use of proprietary information.

Indeed, Plaintiffs have even refused to attach a copy of the infringing publications because they contain copyright materials not sold to the general public, reinforcing the fact that only way a person could gain access to the information and materials in question, is through a contractual relationship with Plaintiffs. Thus, the only way Defendant had access to the materials in order to infringe upon them, was by virtue of his contractual relationship with Plaintiffs. Therefore, the copyright and trademark infringement claims are dependant upon the relationship and the contracts entered into by the parties, all containing arbitration clauses. Therefore, these claims are subject to arbitration.

## b. Lanham Act Claim

Plaintiffs allege that under the Lanham Act, 15 U.S.C. 1125(a), Defendants falsely described and represented certain copyrighted material belonging to Plaintiffs as their own, thereby intentionally deceiving the public as to the true source of the products.

Courts have routinely held that claims falling under the Lanham Act are arbitrable. *See Autoliv Inc.,* 175 F.3d at 723-724; *see also Doctor's Assoc., Inc. v. Distajo,*107 F.3d 126, 133 (2d Cir. 1997); *see also Shearson/American Express, Inc., v. McMahon,* 482 U.S. 220, 226 (1987) (holding that the FAA mandates enforcement of agreements to arbitrate statutory claims).

09CV1493

Plaintiffs' claims of false and misleading representation under the Lanham Act relate directly to the Purchase Agreement in that Defendant is allegedly falsely representing Plaintiffs' products, the rights of which he sold to Plaintiffs via the Purchase Agreement and also forewent via the Settlement Agreement, as his own. Accordingly, the Lanham Act claim is subject to arbitration.

### c.   Misappropriation of Trade Secrets Claim / Common Law Misappropriation

Courts routinely refer claims for misappropriation of trade secrets to arbitration. *Mitsubishi Motors,* 473 U.S. at 627 (holding that claims based on statutory rights can be subject to arbitration); *McMahan Sec. Co., L.P. v. Forum Capital Mkts. L.P.,* 35 F.3d 82, 88 (2d Cir. 1994) (finding claims of trade secret misappropriation arbitrable).

Plaintiffs allege that Defendant Temple, while retained by Plaintiffs as both a consultant and licensee via the Consultancy Agreement, was informed of certain trade secret materials. Following the termination of Defendant's consultancy, Defendant wrongfully misappropriated those trade secrets by developing a separate business using remarkably similar products as those owned by Plaintiffs. Accordingly, Plaintiffs' claims of trade secret misappropriation are dependant upon both the terms of the Consultancy Agreement containing confidentiality clauses as well as the terms of the Settlement Agreement relating to the termination of Defendant's licensing rights, and are subject to arbitration.

### d.   Violation of Unfair Business Practices Act

Plaintiffs allege that Defendants (Temple through his company ESG) have wrongfully misappropriated Plaintiffs' confidential and proprietary information in an attempt to mislead the public in violation of California Business and Professions Code sections 17200 to 17210. Plaintiffs allege that following the termination of the Consultancy Agreement via the Settlement Agreement, Temple formed a new business utilizing essentially the same products and services as those owned by Plaintiffs.

Because this claim is substantially similar to the other claims alleged and

- 7 -

involves the misappropriation of certain copyrighted materials by Defendant, it too is subject to arbitration.  Defendant could only have gained access to the materials he is alleged to have misappropriated as a result of his having helped to create the product, the rights to which he then sold to Plaintiffs.  Any further access Defendant had to the copyrighted materials was a result of his status as a consultant and licensee of the materials after the sale of the product to Plaintiffs.  Thus, resolving this factual allegation against Defendant requires interpretation of Defendant's conduct under the Consultancy Agreement, the Settlement Agreement, and as it relates to the Purchase Agreement.

**e.      Trade Libel and Intentional Interference with Prospective Economic Advantage**

Plaintiffs allege that Defendants made false and defamatory statements regarding Plaintiffs' products and services and that Defendants knew that such statements were false at the time they were made.  Specifically, Plaintiffs claim that Defendant Temple made statements to the public that he left VSA and founded ESG because VSA's programs failed the majority of the time.  To support this claim, Plaintiffs cite to an April 1, 2009 Ezine Magazine article in which Temple was interviewed and allegedly made disparaging comments about Plaintiffs' company.  (Complaint ¶ 64).  Plaintiffs also allege that such comments were made with the intent to harm Plaintiffs financially and to induce clients and prospective clients to sever their present and prospective relationships with Plaintiffs.

These claims arise directly from language in the Settlement Agreement prohibiting either party from discussing products of the other party except that Temple could recite his prior ownership of VVA for the purposes of establishing his professional credentials.  Also, by signing the agreement, both parties promised not to make any statements defaming or disparaging the personal and/or business reputation, practices or conduct of the other party.  (Complaint ¶ 49).  Thus, Plaintiffs' trade libel and interference claims relate directly to the terms of the Settlement Agreement and are

therefore subject to arbitration.

### f. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiffs allege Defendant Temple breached the implied terms of the Consultancy Agreement stating that Defendant Temple would not do anything unfairly to interfere with Plaintiffs' rights to receive the benefits of the contracts. Although the Consultancy Agreement itself does not contain as broad of an arbitration provision as the other contracts entered into by the parties, resolution of this breach of contract claim, by its very nature, involves an interpretation of the terms of the Consultancy Agreement. The arbitration provision contained in the Consultancy Agreement states, "[T]he parties agree, if any dispute arises concerning the interpretation and/or enforcement of the terms of this Agreement, the dispute shall be resolved by binding arbitration." Thus, this claim is subject to arbitration.

### g. Unjust Enrichment

As the unjust enrichment claim is an extension of the other eight claims, it too is subject to arbitration.

### h. Alter Ego

"Alter Ego" does not form the basis of a separate cause of action so this claim should be dismissed. *Local 159 v. Nor-Cal Plumbing, Inc.* 185 F.3d 978, 985 (9th Cir. 1999) ("A request to pierce the corporate veil is only a means of imposing liability for an underlying cause of action and is not a cause of action in and of itself.")

### B. Arbitration is Appropriate between Plaintiffs and ESG even though ESG was not a Signatory to the Contracts Containing the Arbitration Provisions

#### 1. Legal Standard

In determining whether parties have agreed to arbitrate a dispute, the courts apply "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of

arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.,* 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont, Inc.,* 83 F.3d 1046, 1049 (9th Cir. 1996)). General contract and agency principles apply in determining enforcement of arbitration agreement by or against non-signatories, including incorporation by reference, assumption, agency, veil-piercing/alter ego, and estoppel. *Union Sec. Life Ins.,* 555 F.3d at 1045.

Courts have held that in certain limited circumstances, a non-signatory to a contract containing an arbitration provision can compel arbitration under what has been referred to as an "Equitable Estoppel Theory." *See Silver,* 248 F.3d at 320-321. Under this theory, a plaintiff cannot invoke an agreement and claim the benefit of his status under it while attempting to escape its consequences. *Id.*

### 2.    Analysis

As mentioned above, this dispute involves alleged misappropriations of trade secrets and trademark and copyright infringement by Defendants in violation of the Purchase Agreement, Consultancy Agreement, and Settlement Agreement, contracts to which ESG was not a signatory. Plaintiffs argue that because ESG was not a party to the original agreements containing the arbitration clauses, arbitration cannot be compelled between Plaintiffs and ESG.

First, Plaintiffs aver in the complaint that ESG is both the agent and alter ego of Temple. (Complaint ¶¶ 142-151). Indeed, Plaintiffs emphasize that ESG and Temple are one and the same and that the only way ESG could act is through Temple. As such, applying basic contract principals, ESG would be compelled to arbitrate the current dispute.

Second, this case involves a non-signatory seeking to compel arbitration. As such, ESG can compel arbitration under the principal of equitable estoppel. Under this framework, there are two circumstances were a non-signatory can compel arbitration: (1) when a signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory;

09CV1493

and (2) when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract. *Hawkins v. KPMG, LLP,* 423 F. Supp. 2d 1038, 1050 ("a signatory cannot...on the one hand seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but on the other hand, deny the arbitration provisions applicability because the defendant is a non-signatory.") *see also Westmoreland v. Sadoux,* 299 F.3d 462 (5th Cir. 2002).

Both circumstances are present here. First, Plaintiffs attribute the same misconduct to both ESG and Temple involving violations of the contractual relationship between Plaintiffs and Temple. Second, and along these same lines, Plaintiffs allege concerted misconduct on the part of Temple and ESG, essentially characterizing them as the same entity with Temple acting through ESG and vise versa to violate the terms of the contracts. Thus, the only way ESG could be liable is as a result of actions by Temple. Therefore, ESG can compel arbitration based on equitable estoppel.

Therefore, the fact that ESG was not a party to the contracts containing the arbitration provisions does not prevent the claims from being arbitrated.

**III.   CONCLUSION**

Based on the foregoing reasons, the court hereby **GRANTS** Defendants' motion to compel arbitration and dismiss the case. The Clerk of the Court is directed to close the file.

**IT IS SO ORDERED.**

**DATED:  November 5, 2009**

**Hon. Jeffrey T. Miller**
**United States District Judge**

cc:          All parties

09CV1493