1  ROBERT S. GERBER, Cal. Bar No. 137961
rgerber@sheppardmullin.com
2  BRAM HANONO, Cal. Bar No. 259777
bhanono@sheppardmullin.com
3  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
4     Including Professional Corporations
12275 El Camino Real, Suite 200
5  San Diego, California  92130-2006
Telephone:    858-720-8900
6  Facsimile:    858-509-3691

7  Attorneys for Defendants
KEVIN TEMPLE and THE ENTERPRISE SELLING
8  GROUP, LLC

9

10                    UNITED STATES DISTRICT COURT

11               SOUTHERN DISTRICT OF CALIFORNIA

12  VALUESELLING ASSOCIATES, LLC, a          Case No. 09-CV-01493-JM-MDD
    California limited liability company; SALES
13  VISION, LLC, a California limited liability   **DEFENDANTS/CROSS-PETITIONERS'**
    company,                                      **OPPOSITION TO PLAINTIFF/**
14                                                **RESPONDENT VALUESELLING**
                                                  **ASSOCIATES, LLC'S MOTION TO**
15                Plaintiffs - Respondents,       **VACATE, MODIFY, OR CORRECT**
                                                  **ARBITRATION AWARD AND BRIEF**
16         v.                                     **IN SUPPORT OF THEIR PETITION TO**
                                                  **CONFIRM AWARD**
17  KEVIN TEMPLE, an individual doing
    business as THE ENTERPRISE SELLING
18  GROUP; and THE ENTERPRISE SELLING
    GROUP, LLC,                                   Judge:    Hon. Jeffrey T. Miller
19                                                Dept.:    16
                Defendants - Cross-Petitioners.   Date:     May 23, 2011
20                                                Time:     10:00 a.m.

21                                                U.S. Magistrate Judge: Mitchell D. Dembin

22

23

24

25

26

27

28

## TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ................................................................................ 1

II.     BRIEF FACTUAL BACKGROUND LEADING TO ARBITRATION .................. 3

III.    PROCEDURAL HISTORY OF THE ARBITRATION PROCEEDINGS ............. 5

IV.     FOR STRONG PUBLIC POLICY REASONS, COURTS SHOULD
        ALMOST NEVER VACATE, CORRECT, OR MODIFY AN
        ARBITRATION AWARD ....................................................................... 8

        A.      VSA's Motion Is Governed by the CAA. ................................... 9

        B.      The CAA Strongly Favors Confirmation of Arbitration Awards and
                Does Not Allow Vacatur or Correction of Awards for An Arbitrator's
                Error of Law or Fact. ................................................................ 10

        C.      The FAA Also Strongly Favors Confirmation of Arbitration Awards
                and Only Allows Vacatur, Correction, or Modification of Awards in
                Very Narrow Circumstances. .................................................. 12

V.      THE ARBITRATOR DID NOT EXCEED HIS POWERS AND THE
        ARBITRATION AWARD SHOULD NOT BE VACATED ................................. 15

        A.      There Are No Statutory Grounds for Vacatur of the Arbitration Award
                and the Court is Precluded from Re-trying this Dispute. ............................. 15

        B.      The Arbitrator's Well-Reasoned Award Shows that the Arbitrator Did
                not Manifestly Disregard the Law. ................................................ 16

        C.      The Arbitrator's Award Is Not Completely Irrational. .................................. 20

VI.     THERE ARE NO GROUNDS TO MODIFY OR CORRECT THE
        ARBITRATION AWARD ....................................................................... 22

VII.    DEFENDANTS' CROSS-PETITION SHOULD BE CONFIRMED AND
        DEFENDANTS SHOULD BE AWARDED THEIR ATTORNEYS' FEES
        AND COSTS IN OPPOSING THIS MOTION ....................................... 24

VIII.   CONCLUSION ................................................................................ 24

W02-WEST:6AXH1\403513459.1

1

## TABLE OF AUTHORITIES

2

Page(s)

Cases

*Advanz Behavioral Management Resources, Inc. v. Mariflor*
   21 F.Supp.2d 1179 (C.D. Cal. 1998).................................................................... 19

*Bosack v. Soward*
   586 F.3d 1096 (9th Cir. 2009)........................................... 13, 14, 15, 16, 20, 22

*Collins v. Horton*
   505 F.3d 874 (9th Cir. 2007)................................................................... 12, 14

*Comedy Club, Inc. v. Improv West Associates*
   553 F.3d 1277 (9th Cir. 2009)............................................................. 14, 15, 22

*Coutee v. Barrington Capital Group, LP*
   336 F.3d 1128 (9th Cir. 2003)........................................................................ 14

*Duferco Int'l Steel Trading v. T. Klaveness Shipping*
   333 F. 3d 383 (2.d Cir. 2003)........................................................................ 14

*Hall Street Associates, LLC v. Mattel, Inc.*
   552 U.S. 576 (2008) ........................................................................ 13, 15, 19

*Hoffman v. Cargill Incorp.*
   236 F.3d 485 (8th Cir. 2001)................................................................... 12, 15

*Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*
   341 F.3d 987 (9th Vir. 2003)........................................................................ 15

*Marsch v. Williams*
   23 Cal.App.4th 238 (1994)........................................................................ 11

*Mattel Inc. v. MGA Entertainment, Inc.*
   616 F.3d 904 (9th Cir. 2010)................................................................... 17, 21

*Michigan Mutual Insurance Co. v. Unigard Security Insurance Co.*
   44 F.3d 826 (9th Cir. 1995)............................................................. 14, 15, 21, 22

*Moncharsh v. Heily & Blase*
   3 Cal.4th 1 (1992)........................................................... 10, 11, 12, 16

*Ovitz v. Schulman*
   133 Cal.App.4th 380 (2005)........................................................................ 10

*Schlessinger v. Rosenfeld, Meyer & Susman*
   40 Cal.App.4th 1096 (1995)........................................................................ 11

-ii-

*Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University*
   489 U.S. 468 (1988) ........................................................................................................ 9, 10

*Wallace v. Buttar*
   378 F.3d 182 (2nd Cir. 2004) ........................................................................................ 14, 19

<u>Statutes</u>

9 U.S.C. § 1 *et seq.* ............................................................................................................ 9

9 U.S.C. § 9 ............................................................................................................. 13, 15, 24

9 U.S.C § 10 ...................................................................................................................... 13

9 U.S.C. § 11 ..................................................................................................................... 13

9 U.S.C § 11(b) ................................................................................................................. 22

9 U.S.C. § 13 ....................................................................................................................... 1

17 U.S.C. §§ 101 *et seq.* ..................................................................................................... 4

Cal. Code Civ. Pro. § 1285.4(b) ......................................................................................... 1

Cal. Code Civ. Pro. § 1286 ......................................................................................... 12, 24

Cal. Code Civ. Pro. § 1286.2(a) ....................................................................................... 11

Cal. Code Civ. Pro. § 1286.6 ........................................................................................... 11

Cal. Code Civ. Pro. § 1286.6(b) ....................................................................................... 23

W02-WEST:6AXH1\403513459.1

Case No. 09-CV-01493-JM-MDD
OPPOSITION TO VALUESELLING MOTION TO VACATE,
MODIFY, OR CORRECT ARBITRATION AWARD

1    Defendants and Cross-Petitioners Kevin Temple and The Enterprise Selling

2  Group, LLC (collectively "Defendants") hereby oppose Plaintiff and Respondent Value

3  Selling Associates, LLC's ("VSA") Motion to Vacate, Modify, or Correct Arbitration Award

4  and request that the Court grant Defendants Cross-Petition to Confirm Arbitration Award

5  ("Cross-Petition") (Doc. No. 63).[1]

## I.  INTRODUCTION

7    Defendants won a fair, lengthy, arbitration on the merits presided over by a

8  non-biased arbitrator.  VSA is not happy about it, does not want to abide by the Arbitration

9  Award, and does not want to pay the fee award associated with it.  Nevertheless, to

10  encourage the speedy, efficient, and just resolution of disputes outside of the courts, public

11  policy and the law mandate that the Court uphold the Arbitrator's Award, and end this

12  dispute now because there are no grounds for vacatur, modification, or correction of the

13  Arbitration Award.

14    VSA and Defendants are competitors, each offering sales training services.

15  Julie Thomas, the sole owner of VSA, purchased the ValueSelling business from Mr. Temple

16  and his partner and negotiated a five-year non-compete provision.  That five years has long

17  expired.  Now that Mr. Temple is free to compete with VSA, VSA is on a mission to

18  eliminate fair competition from the marketplace.  Among other allegations, VSA sued

19  Defendants claiming infringement of its copyrighted ValueSelling Program workbook, and

20  particularly, specific portions of that workbook including a "Value Prompter" form and a

21  "Qualified Prospect Formula" contained in the workbook.

---

[1]  In addition to the arguments set forth herein as to why the Court should deny VSA's Motion and grant Defendants' Cross-Petition, VSA's motion should also be denied because VSA's motion is defective under the California Arbitration Act and the Federal Arbitration Act, and is in violation of Local Rules.  First, a petition to vacate an arbitration award must state the name of the arbitrator pursuant to Cal. Code Civ. Pro. § 1285.4(b), or under 9 U.S.C. § 13, it must have attached the agreement of the parties appointing the arbitrator.  VSA did not comply with either rule.  Second, VSA submitted "sealed" exhibits in support of its motion, but VSA did not seek prior court approval in violation of Rule 79.2(c), which requires a court order to file documents under seal.  Finally, VSA failed to electronically file the first seven of its exhibits, in violation of the CM/ECF policies.

Case No. 09-CV-01493-JM-MDD
OPPOSITION TO VALUESELLING MOTION TO VACATE,
MODIFY, OR CORRECT ARBITRATION AWARD

1   By applying the "extrinsic/intrinsic" test advocated by VSA, the Arbitrator,

2   John H. L'Estrange, Jr., Esq., correctly found that Defendants did not infringe VSA's

3   copyrighted material, and in doing so found that neither the ValuePrompter nor the Qualified

4   Prospect Formula was protected by copyright.  The Arbitrator clearly and thoughtfully

5   explained his findings in his 26-page Interim Award.  Moreover, the Arbitrator decided the

6   matter after a year of litigation involving voluminous document production, depositions, a

7   motion for preliminary injunction against Defendants, pre-arbitration briefs, a 10-day

8   arbitration hearing with 10 witnesses and two experts, and post-arbitration briefs.

9   There are no grounds for vacatur of the Arbitral Award under the California

10   Arbitration Act ("CAA") or the Federal Arbitration Act ("FAA"), both under which courts

11   refuse to overturn arbitration awards except in vary narrow circumstances.  Because the

12   parties agreed that California law governed their agreements, the CAA governs this dispute.

13   Under the CAA, a court can only vacate or correct an award if narrow statutory grounds are

14   met.  Those grounds are not present in this case, and therefore VSA's motion must be denied.

15   Even if this Court chooses to apply the FAA as advocated by VSA, the

16   outcome will be the same.  VSA's reliance on the extremely narrow exceptions recognized in

17   the Ninth Circuit, which allows for vacatur of an arbitration award if an arbitrator

18   "manifestly disregards the law" or if his award is "completely irrational," is misplaced and

19   will fail.  First, there is no evidence that the Arbitrator "manifestly disregarded" the law by

20   acknowledging application of the "extrinsic/intrinsic" copyright test and then ignoring it.

21   Rather, review of the Arbitrator's Award shows that the Arbitrator actually applied the test.

22   Second, the Arbitrator's finding that neither the ValuePrompter nor the

23   Qualified Prospect Formula are protected by copyright is not completely irrational.  The

24   Arbitrator decided that issue because it was submitted to the Arbitrator for his review, and

25   determination of that issue was inherently part of the "extrinsic/intrinsic" test.  To modify the

26   Award and sever the foregoing holding would completely affect the outcome of the

27   controversy and allow VSA to continue to allege copyright infringement against Defendants.

28   Therefore, neither vacatur nor modification of the Award is justified on these grounds.

-2-

1   VSA chose to arbitrate its dispute and agreed to abide by the Arbitrator's

2   Award, whether right or wrong.  Because there are no grounds to support VSA's Motion, this

3   Court must grant Defendants' Cross-Petition to confirm the arbitration Award and enter

4   judgment thereon in favor of Mr. Temple and The Enterprise Selling Group, LLC ("ESG").

5   **II.  BRIEF FACTUAL BACKGROUND LEADING TO ARBITRATION**

6   On or about July 9, 2003, VSA[2] and its holding company, Sales Vision, LLC

7   ("SVL"), entered into a Purchase Agreement with Mr. Temple and third parties ValueSelling

8   Systems Inc. ("VSSI") (owned by Lloyd Sappington) and Dialogue Management, Inc. for the

9   acquisition of the ValueVision Associates business (now called ValueSelling Associates, or

10  "VSA") ("Purchase Agreement").  (*See* VSA Ex. B-0983.)  The purchase included

11  intellectual property owned by VSSI, known as the ValueSelling Program.  Importantly, the

12  parties negotiated for a five-year non-competition clause to be part of the Agreement.  (*Id.*,

13  pp. 993-94; ¶ 8.8.)  There was no doubt at the time of the purchase that the parties knew Mr.

14  Temple would be competing again with VSA within five years.

15  In conjunction with the Purchase Agreement, on or about July 9, 2003, VSA

16  and Mr. Temple entered into a consultancy agreement whereby Mr. Temple would act as a

17  consultant for VSA with certain licensing rights to the ValueSelling Program then acquired

18  by VSA ("Consultancy Agreement").  (*See* VSA Ex. B-0722.)

19  The relationship between VSA and Mr. Temple was ongoing until a series of

20  disputes between the parties apexed in 2007 – shortly before Mr. Temple's non-competition

21  clause was set to expire.  In December 2007, VSA, SVL, and Mr. Temple entered into a

22  settlement agreement to terminate their business relationship, which included early

23  termination of the non-competition provision in the Purchase Agreement ("Settlement

24  Agreement").  (*See* VSA Ex. B-0339.)  Among other things, the parties specifically

25  acknowledged that Mr. Temple would embark on a new business venture for products

---

[2]   The entity which was a party to the Purchase Agreement was "Value Vision Associates, LLC," but subsequent to its purchase, ownership was transferred to ValueSelling Associates, LLC.

-3-

1   (namely, ESG) other than "ValueSelling Products."  (*Id.*, p. 341, ¶ 7.)

2          Pursuant to the Purchase Agreement, Consultancy Agreement, and Settlement

3   Agreement (the "Agreements"), the parties agreed to submit to arbitration any dispute,

4   controversy, or question arising out of the Agreements.  (VSA Ex. B-0983, p. 997, ¶ 11.4;

5   VSA Ex. B-0722, p. 727, ¶ 9.4; VSA Ex. B-0339, p. 342, ¶ 12.)  Additionally, pursuant to

6   the Agreements, the parties agreed that the Agreements would be governed by California

7   law.  (VSA Ex. B-0983, p. 997, ¶ 11.4; VSA Ex. B-0722, p. 727, ¶ 9.2; VSA Ex. B-0339, pp.

8   341-42, ¶ 11.)

9          Despite the arbitration provisions in the Agreements,[3] on July 9, 2009, VSA

10   and SVL filed suit against Defendants in this Court alleging eleven causes of action,

11   including violations of the Copyright Act of 1976 (17 U.S.C. §§ 101 *et seq.*) under the

12   Agreements and as to Defendants' alleged improper use and infringement of the

13   ValueSelling Program materials, and in particular, the ValuePrompter and the Qualified

14   Prospect Formula.[4]  (Doc. No. 1.)  On September 3, 2009, Defendants filed a motion for an

15   order compelling arbitration and dismissing the case, or in the alternative, staying the

16   proceedings.  (Doc. No. 4.)  On November 5, 2009, this Court, granted Defendants' motion,

17   compelling the parties to arbitrate and dismissing the case.[5]  (Doc No. 11.)

18          On January 5, 2010, pursuant to this Court's order compelling arbitration and

19   the arbitration provisions in the Agreements, VSA filed a demand for arbitration against

20

21   [3]  Filing an unnecessary lawsuit instead of initiating arbitration, and then fighting the motion to compel arbitration, was the first set of steps VSA took to make this case expensive for Mr. Temple and his company.  The length and scope of the proceedings, as described further herein, shows why there was likely no doubt in the Arbitrator's mind why an award of attorneys' fees to Defendants was appropriate in this case.

22

23   [4]  The "ValuePrompter" is, as the Arbitrator found under copyright law, a "blank form" which constitutes part of the ValueSelling Program materials.  VSA alleged ESG's "eNavigator" was nothing more than a "copy" of the ValuePrompter.  The "Qualified Prospect Formula" is a formula represented by words and numbers which is also a part of the ValueSelling Program materials.  VSA alleged ESG's "Prospect to Customer Formula" was nothing more than a "copy" of VSA's Qualified Prospect Formula.

24

25

26   [5]  The case was later reopened on February 10, 2011 in order to permit the Court to determine whether Defendants are entitled to attorneys' fees and costs for prevailing on their motion to compel arbitration.  (Doc. No. 18.)  That decision is still pending.

27

28

-4-

Defendants under the auspices of the American Arbitration Association.  (Gerber Decl., ¶ 2.) VSA's demand for arbitration included nine causes of action, including copyright infringement.  (*Id.*)  "In accordance with the California Arbitration Law (CCP § 1281.85 et seq.)," on February 4, 2010, the parties, through the American Arbitration Association and by mutual agreement, appointed Mr. L'Estrange as Arbitrator in this matter.  (*Id*; *see also* Ex. D to Cross-Petition (Doc. No. 63).)

### III.  PROCEDURAL HISTORY OF THE ARBITRATION PROCEEDINGS

The arbitration proceedings lasted approximately one year, including document productions, depositions, a motion for preliminary injunction, pre-hearing briefing, a 10-day hearing, and post-hearing briefing.  Even though arbitration is supposed to be quick, efficient and inexpensive, the arbitration proceeding in this case was long, drawn-out and expensive. It resembled a judicial proceeding in many ways, discounting any arguments that VSA was not afforded justice or that its claims did not receive appropriate consideration by the Arbitrator.

Shortly after the arbitration proceedings commenced in January, 2010, both parties propounded lengthy document requests resulting in the production of thousands of pages of documents between the parties.  (Gerber Decl., ¶ 3.)  The parties then engaged in a long meet and confer process which resulted in the production of even more documents from both parties.  (*Id.*)  In total, Defendants produced over 4,400 pages of documents. Defendants' production included the electronic production of thousands of pages of documents, which included electronically stored information requested by VSA, as well as thousands of pages of hard copies of additional documents.  VSA produced over 10,600 pages of documents to Defendants.  (*Id.*)

On March 15, 2010, VSA filed a motion for preliminary injunction, based on its copyright claim, breach of contract claims, and trademark infringement claim (which was eventually abandoned prior to the arbitration hearing).  (Gerber Decl., ¶ 4.)  VSA's motion was 56 pages long, not including the 25 exhibits and two supporting declarations, which

W02-WEST:6AXH1\403513459.1

1   stood approximately six inches tall.[6]  (*Id.*)  Defendants opposed the motion with a 47-page

2   brief, which was accompanied by 18 exhibits as well as a supporting declaration.  (*Id.*)  VSA

3   also submitted a nine-page reply brief, along with 12 more exhibits and three declarations for

4   the Arbitrator's consideration.  (*Id.*)

5          On May 14, 2010, the parties presented oral arguments to the Arbitrator

6   regarding VSA's motion for preliminary injunction, which lasted approximately two hours.

7   (Gerber Decl., ¶ 5.)  After 10 more days of deliberation, on May 24, 2010, the Arbitrator

8   issued his 19-page Order Re: [VSA]'s Motion for Preliminary Injunction, denying VSA's

9   motion in its entirety.  (*Id.*; VSA Ex. A-0001.)

10          Claiming that the Arbitrator and Defendants "misunderstood" VSA's claims,

11   VSA petitioned the Arbitrator to file a "specification of claims."  (Gerber Decl., ¶ 6.)  The

12   reason VSA had to petition the Arbitrator to do so is because VSA missed the deadline

13   previously set by the Arbitrator to file a specification of claims (filing a specification of

14   claims was a requirement pursuant to the Arbitrator's Preliminary Hearing and Scheduling

15   Order, which VSA ignored).  (*Id.*)  Defendants did not oppose VSA's petition.  Therefore, it

16   was granted, and on June 7, 2010, VSA filed its specification of claims.[7]  (VSA Ex. A-0036.)

17          Discovery continued (after the parties attempted to mediate) in September

18   2010.  (Gerber Decl., ¶ 7.)  Additional documents were produced by the parties, and the

19   parties engaged in approximately four full days of depositions.  (*Id.*)  VSA took the

20   deposition of Kevin Temple on September 27, 28 and 30, 2010.  Defendants took the

21   deposition of Julie Thomas on September 30 and October 1, 2010.  (*Id.*)

22          Prior to the arbitration hearing, the parties submitted pre-hearing briefs.  On

23

---

24   [6]   One of VSA's exhibits, which VSA relied upon to argue that it would prevail in its
        copyright infringement claim, was Mr. Sappington's 1990 compilation copyright of a
25      ValueSelling Program workbook.  In its motion, VSA made the argument that Defendants
        copied the ValuePrompter and the Qualified Prospect Formula in that workbook.  (Gerber
26      Decl., ¶ 4.)

27   [7]   In its specification of claims, just as it had argued in its preliminary injunction motion, VSA
        claimed that Defendants infringed three of its copyrights, including Mr. Sappington's 1990
28      copyright.  (VSA Ex. A-0036, p. 43.)

Case No. 09-CV-01493-JM-MDD
OPPOSITION TO VALUESELLING MOTION TO VACATE,
MODIFY, OR CORRECT ARBITRATION AWARD

1    October 27, 2010, VSA filed and served its 26-page pre-hearing brief.  (Gerber Decl., ¶ 8;

2    VSA Ex. A-0046.)[8]  On November 4, 2010, Defendants served and filed their 29-page pre-

3    hearing brief.  (Gerber Decl., ¶ 8; VSA Ex. A-0082.)  By the time the arbitration hearing

4    began, the Arbitrator clearly had a very good understanding of the issues, having read and

5    analyzed over one hundred pages of briefing and the key evidentiary exhibits to be offered

6    by the parties, including their primary business agreements and examples of the

7    ValuePrompter and Qualified Prospect Formula as set forth in various workbooks together

8    with Defendants' alleged infringing examples.  (*Id.*)

9         The arbitration hearing began on November 9, 2010.  (Gerber Decl., ¶ 9.)  The

10   hearing proceeded over 10 business days, concluding on November 23, 2010.  During the

11   10-day hearing, the Arbitrator presided over opening oral statements by both parties, as well

12   as testimony (live, and by declaration) of 10 percipient witnesses and two expert witnesses.

13   (*Id.*)  In addition, VSA submitted 143 exhibits and Defendants submitted 441 exhibits to the

14   Arbitrator for his consideration (not all were referred to by counsel).  (*Id.*)

15        After the arbitration hearing ended, the Arbitrator suggested to both counsel

16   that he preferred to take closing briefs in lieu of an oral argument.  (Gerber Decl., ¶ 10.)

17   Neither side objected or demanded an opportunity for oral argument.  (*Id.*)  On December 10,

18   2010, the parties therefore submitted comprehensive post-hearing briefs for the Arbitrator's

19   consideration.  (*Id.*)  Both parties' briefs were 25 pages in length, setting forth once again

20   each parties' claims and defenses.[9]  (*Id.*; VSA Exs. A-0120 and A-1050.)

21        On January 6, 2011, the Arbitrator issued a 26-page, well-articulated, legally

22   supported, and well-reasoned Interim Award, finding in favor of Defendants regarding

23   VSA's copyright infringement claim (as well as finding for and against VSA and Defendants

24   regarding various other claims and cross-claims), and declaring Defendants the overall

25   ────────────────────

     [8]   In its brief, VSA once again argued that Defendants infringed its copyrights by copying the

26         ValuePrompter.  (VSA Ex. A-0046, p. 62-64.)

     [9]   In its post-hearing brief, VSA specifically alleged that Defendants copied VSA's

27         ValuePrompter and Qualified Prospect Formula, which was the same allegation argued by

           VSA during the hearing.  (Gerber Decl., ¶ 9; VSA Ex. A-0120, pp. 128, 132-33.)

28

Case No. 09-CV-01493-JM-MDD
OPPOSITION TO VALUESELLING MOTION TO VACATE,
MODIFY, OR CORRECT ARBITRATION AWARD

prevailing parties entitled to an award of attorneys' fees and costs. (Gerber Decl., ¶ 11.; VSA Ex. A-0225.) The Interim Award disposed of all claims and counterclaims in the arbitration, leaving open only the issue regarding the amount of Defendants' fee award. (*Id.*) In spite of the lengthy and detailed Interim Award, which specifically disposed of VSA's copyright claim, VSA brought a motion for reconsideration and lost.[10] (Gerber Decl., ¶ 11; VSA Ex. A-0333.) The parties submitted briefs regarding attorneys' fees, and on March 16, 2011, the Arbitrator issued his Final Award, confirming the Interim Award and awarding Defendants $262,135.02 in attorneys' fees and costs. (Gerber Decl., ¶ 11; VSA Ex. A-0336.)

On April 11, 2011, VSA filed the instant motion, arguing once again that the Arbitrator and Defendants misunderstand VSA's claims, and therefore, this Court should vacate, modify, or correct the Arbitrator's Final Award. (Doc. Nos. 24-59.)[11] On April 13, 2011, Defendants filed a Cross-Petition to Confirm the Arbitration Award because there are no grounds to vacate, modify, or correct the Arbitration Award and because they seek an affirmative order of this Court by way of this motion affirming the Award and granting them additional fees and costs associated with this motion. (Doc No. 63.) Defendants hereby incorporate their Cross-Petition by reference.

On April 25, 2011, Defendants filed a Motion to Strike the unofficial hearing transcript submitted by VSA in support of its Motion to Vacate, Modify, or Correct the Arbitration Award. (Doc. No. 66.) Defendants hereby incorporate their arguments presented in the motion to strike as to why it is wholly improper for the Court to consider the unofficial transcript in deciding this matter.

## IV. FOR STRONG PUBLIC POLICY REASONS, COURTS SHOULD ALMOST NEVER VACATE, CORRECT, OR MODIFY AN ARBITRATION AWARD

Courts, California and federal alike, are extremely adverse to overturning

---

[10] As here, the Arbitrator found that VSA's motion to, among other things, modify the Interim Award, sought "major substantive modifications to the Interim Award." (VSA Ex. A-0333, p. 335.)

[11] On April 12, 2011, the Court issued a discrepancy order requiring VSA to re-file its motion. (Doc. No. 60.) VSA re-filed its motion on April 14, 2011. (Doc. No. 64.)

1   arbitration awards.  There is strong public policy which dictates that arbitration awards

2   should be upheld except in very narrow circumstances.  The purpose of arbitration is to

3   afford parties quick, inexpensive, and **conclusive** resolution of their disputes.  Because

4   parties contract to allow an arbitrator to adjudicate their disputes, parties are bound by an

5   arbitrator's decision, **right or wrong**.  They knowingly give up a right to a jury trial, and

6   they knowingly give up a right to judicial review for errors of fact and law.  This policy is

7   clear in California, and under the CAA, which governs this dispute, VSA has presented no

8   grounds for vacatur or modification of the Arbitration Award.

9          Instead, VSA argues this dispute is governed by the FAA, rather than the CAA.

10   VSA clings to very narrow exceptions recognized in the Ninth Circuit, which allows for

11   vacatur of an arbitration award if an arbitrator "manifestly disregards the law" or if his or her

12   award is "completely irrational."  The problem for VSA is that even if the FAA applies, the

13   Award in this case is neither a product of a "manifest disregard of the law" or "complete

14   irrationality," and these exceptions are extremely narrow and rarely granted.  Moreover, they

15   do not allow a court to review and weigh evidence *de novo* or reconsider the legal merits of

16   the controversy as VSA requests this Court to do.  Whether this Court decides this motion

17   under the CAA or the FAA, the conclusion will be the same:  VSA's motion must be denied

18   and the Arbitral Award must be confirmed.

19   **A.**      **VSA's Motion Is Governed by the CAA.**

20          The instant motion should be decided pursuant to the CAA (Cal. Civ. Pro.

21   § 1280 *et seq.*), not the FAA (9 U.S.C. § 1 *et seq.*).  The Supreme Court has made clear that

22   the FAA rules governing arbitration do not apply where the parties have provided otherwise.

23   In *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior*

24   *University*, 489 U.S. 468, 472-76 (1988) the Supreme Court held that the CAA applied

25   where the parties agreed the contract would be governed by "'the law of the place where the

26   project is located,'" which was California in that case.  The Supreme Court explained that

27   nothing in the FAA prevents enforcement of agreements to arbitrate under different rules.

28   *Id.* at 476.  Indeed, the Court explained that the purpose of the FAA is to enforce arbitration

1   agreements into which parties had entered.  Therefore, if parties choose to arbitrate under

2   California law, then the CAA applies.  *Id.* at 478; *see also Ovitz v. Schulman*, 133

3   Cal.App.4th 380, 848-55 (2005) (the FAA does not preempt California's statutory grounds

4   for vacating arbitration award).

5           Here, the parties agreed the Agreements and the resolutions of their disputes

6   would be governed by California law.  (VSA Ex. B-0983, p. 997, ¶ 11.4; VSA Ex. B-0722,

7   p. 727, ¶ 9.2; VSA Ex. B-0339, pp. 341-42, ¶ 11.)  The parties also appointed the Arbitrator

8   pursuant to the CAA, not the FAA. (Gerber Decl., ¶ 2; Ex. D to Cross-Petition (Doc. No.

9   63).)  Therefore, the issue of whether or not this Court confirms the Arbitration Award is to

10  be governed by the CAA, as agreed to by the parties.[12]

11  **B.      The CAA Strongly Favors Confirmation of Arbitration Awards and Does Not**

12  **        Allow Vacatur or Correction of Awards for An Arbitrator's Error of Law or**

13  **        Fact.**

14          California courts strongly favor enforcement of arbitration awards, and

15  motions to vacate or correct arbitration awards are rarely granted because "the Legislature

16  has expressed a 'strong public policy in favor of arbitration as a speedy and relatively

17  inexpensive means of dispute resolution.'"  *Moncharsh v. Heily & Blase*, 3 Cal.4th 1, 11

18  (1992) (citation omitted).

19          The California Supreme Court has made clear that a court's power to overturn

20  an arbitrator's award is confined to narrow statutory grounds.  *Moncharsh*, 3 Cal.4th at 11

21  ("We conclude that an award reached by an arbitrator pursuant to a contractual agreement to

22  arbitrate is not subject to judicial review except on the grounds set forth in sections 1286.2

23  (to vacate) and 1286.6 (for correction)").  The Court made clear that the "**merits of the**

24  **controversy between the parties are not subject to judicial review. . . courts will not**

---

12   While Defendants argued in connection with their motion to compel arbitration that this
original case should be dismissed and ordered to arbitrate pursuant to the FAA, the parties
later agreed to arbitrate under the CAA by having the Arbitrator appointed "[i]n accordance
with the California Arbitration Law (CCP Section 1281.85 et seq.)" and conducting an
arbitration under the auspices of his jurisdiction with the American Arbitration Association.

**review the validity of the arbitrator's ruling . . . [and] a court may not review the sufficiency of the evidence supporting an arbitrator's award**." *Id.* at 11 (emphasis added); *see also e.g. Schlessinger v. Rosenfeld, Meyer & Susman*, 40 Cal.App.4th 1096 (1995) (same); *Marsch v. Williams*, 23 Cal.App.4th 238, 244 (1994) ("even where application of a particular body of law is required by the parties' arbitration agreement, an arbitrator's failure to apply such law is not in excess of an arbitrator's powers").

Consistent with the foregoing, the only statutory grounds on which an arbitration award may be vacated under the CAA are found in Section 1286.2(a) of the California Code of Civil Procedure, which provides that a court may vacate an award if it determines that:  (1) it was procured by corruption, fraud or other undue means; (2) the arbitrator was corrupt; (3) the arbitrator substantially prejudiced a party by his misconduct; (4) "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted"; (5) the parties' rights were prejudiced because the arbitrator refused to postpone the hearing or refused to hear evidence; and (6) the arbitrator failed to disclose grounds for disqualification or was disqualified.

With regard to subsection (4) above, the *Moncharsh* Court stated:

> It is well settled that 'arbitrators do not exceed their powers merely because they assign an erroneous reason for their decision.' [citations omitted].  A contrary holding would permit the exception to swallow the rule of limited judicial review; a litigant could always contend the arbitrator erred and thus exceeded his powers. . . .[I]t is within the 'powers' of the arbitrator to resolve the entire 'merits' of the 'controversy submitted' by the parties. [citations omitted]  Obviously, the 'merits' include all the contested issues of law and fact submitted to the arbitrator for decision.  The arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement. *Id*. at 28.

The only statutory grounds on which an arbitration award may be corrected under the CAA are found in Section 1286.6 of the California Code of Civil Procedure, which provides that a court may correct an award if it determines: (a) there is an evident miscalculation of figures or an evident mistake in the description or a person or thing in the

-11-

1   award; (b) "[t]he arbitrators exceeded their powers but the award may corrected without

2   affecting the merits of the decision upon the controversy submitted"; or (c) the award is

3   imperfect in its form.

4           If none of the following statutory grounds for vacatur or correction of an award

5   is met, a court <u>must</u> confirm the arbitration award.  Cal. Code Civ. Pro. § 1286.  Courts

6   support this strict rule because "by voluntarily submitting to arbitration, the parties have

7   agreed to bear the risk in return for a quick, inexpensive, and conclusive resolution to their

8   dispute."  *Moncharsh* at 11.  "[A]rbitral finality is a core component of the parties' agreement

9   to submit to arbitration.  Thus, an arbitration decision is final and conclusive *because the*

10  *parties have agreed that it be so.*"  *Id.* at 10 (emphasis in original).  The second reason courts

11  "tolerate risk of an erroneous decision" is because the risk of arbitral error has been reduced

12  by the statutory provisions allowing courts to vacate or correct for "serious problems with

13  the award itself or with fairness of the arbitral process."  *Id.* at 12.

14  **C.    The FAA Also Strongly Favors Confirmation of Arbitration Awards and Only**

15  **        Allows Vacatur, Correction, or Modification of Awards in Very Narrow**

16  **        Circumstances.**

17          Similar to the policy favoring the finality of arbitration agreements under the

18  CAA, courts applying the FAA also favor enforcement of arbitration awards and rarely grant

19  motions to vacate, modify, or correct an arbitration award.  Courts applying the policies of

20  the FAA understand that "'[b]road judicial review of arbitration decisions could well

21  jeopardize the very benefits of arbitration, [i.e. speed and informality,] rendering informal

22  arbitration merely a prelude to a more cumbersome and time-consuming judicial review

23  process.'"  *Collins v. Horton*, 505 F.3d 874, 879 (9th Cir. 2007) (finding that arbitrator did

24  not manifestly disregard the law in failing to give preclusive effect to prior federal court

25  decision) (citing *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998

26  (9th Vir. 2003)).  Thus, courts "tread lightly in reviewing arbitration awards" and review is

27  "extremely narrow."  *Hoffman v. Cargill Incorp.*, 236 F.3d 485, 461 (8th Cir. 2001) (holding

28  that the district court exceeded its authority in vacating the arbitration award.)

-12-

Under the FAA, a court's power to overturn an arbitrator's award is confined to narrow statutory grounds, similar to the grounds under the CAA.  In *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 584 (2008), the Supreme Court held that 9 U.S.C §§ 10 and 11 "respectively provide the FAA's exclusive grounds for expedited vacatur and modification."  Parties are not allowed to expand the scope of judicial review by contract. *Id.* at 578-81.  And, "'**Neither erroneous conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the [FAA], which is unambiguous in this regard**.'"  *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009) (citing *Kyocera*, 341 F.3d  at 994) (emphasis added).  Fairly read, that is the entirety of what VSA complains of here.

Under Section 10(a), a court may vacate an award only if it determines that: (1) it was procured by corruption, fraud, or undue means; (2) there was evident partiality in the arbitrator; (3) the arbitrator substantially prejudiced a party by his misconduct or by refusing to postpone the hearing or refusing to hear evidence; and (4) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

The only statutory grounds on which an arbitration award may be corrected or modified under the FAA are found in 9 U.S.C. § 11, which provides that a court may correct or modify an award if it determines: (a) there is an evident material miscalculation of figures or an evident mistake in the description or a person or thing in the award; (b) "where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted"; or (c) the award is imperfect in its form and not affecting the merits of the controversy.

Notwithstanding the Supreme Court's clear holding in *Hall Street* – that vacatur of an award is restricted to the statutory grounds set out in the FAA – the Ninth Circuit still applies very narrow non-statutory grounds for vacatur related to an arbitrator "exceeding his powers" under Section 9 above.  The Ninth Circuit recognizes that "[a]rbitrators exceed their powers when they express a 'manifest disregard of law,' or when

-13-

they issue an award that is 'completely irrational.'"  *Bosack*, 586 F.3d 1at 104 (citing cases).

But, under these standards, "**[r]eview of an arbitration award is both limited and highly deferential**."  *Comedy Club, Inc. v. Improv West Associates*, 553 F.3d 1277, 1288 (9th Cir. 2009) (emphasis added).[13]  Additionally, manifest disregard of the facts is **not** a grounds for vacatur.  *Coutee v. Barrington Capital Group, LP*, 336 F.3d 1128, 1133 (9th Cir. 2003).

"'Manifest disregard of the law' means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law.  **It must be clear from the record that the arbitrator recognized the applicable law and then ignored it**." *Michigan Mutual Insurance Co. v. Unigard Security Insurance Co.*, 44 F.3d 826, 832 (9th Cir. 1995) (finding that the arbitrators did <u>not</u> manifestly disregard the law) (citations omitted; emphasis added).  The "manifest disregard exception requires something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law. . . . Accordingly, [a court] may not reverse an arbitration award even in the face of an erroneous interpretation of the law."  *Collins*, 505 F.3d at 879 (citations omitted).  "Moreover, to rise to the level of manifest disregard the governing law alleged to have been ignored by the arbitrators must be *well defined, explicit, and clearly applicable*."  *Id.* at 879-80 (citations omitted, emphasis in original).  The manifest disregard of law doctrine has been described as "**severely limited**" and a "**doctrine of last resort**." *Wallace v. Buttar*, 378 F.3d 182, 189 (2nd Cir. 2004) ("arbitrator did not manifestly disregard the law because there was a colorable justification for the arbitration award").

Similarly, the "completely irrational" standard is "extremely narrow and is satisfied only 'where [the arbitration decision] fails to draw its essence from the agreement.'"

---

[13]   The Second Circuit has also traditionally applied the manifest disregard exception. However, rarity of overturning an arbitration award on that basis highlights the steep burden VSA must prove to vacate the arbitrator's award in this matter.  In *Duferco Int'l Steel Trading v. T. Klaveness Shipping*, 333 F. 3d 383, 389 (2.d Cir. 2003) the court calculated that between 1960 and 2003, the Second Circuit applied the manifest disregard of the law standard 48 times.  Only four of the 48 arbitral awards were vacated, *and* of those four, three were arguably based on statutory grounds other than manifest disregard of the law, meaning that in essence, the Second Circuit approved of the exception <u>one time in 43 years</u>.

1  *Comedy Club*, 553 F.3d at 1277 (finding that the arbitrator's award was not completely

2  irrational) (citing *Hoffam*, 553 F.3d at 461-62).  "To consider whether an award drew its

3  essence from the … agreement, the court must ensure that the arbitrator looked to the words

4  of the contract and to the conduct of the parties."  *Michigan Mutual*, 44 F.3d at 831 (citation

5  omitted).  Moreover, courts "may not set an award aside simply because [it] might have

6  interpreted the agreement differently . . . [r]ather the contract must not be 'susceptible of the

7  arbitrator's interpretation.'"  *Hoffman*, 553 F.3d at 462; *see also Bosack*, 686 F.3d at 1106

8  ("the question is whether the award is 'irrational' with respect to the contract, not whether the

9  [arbitrator's' findings of fact are correct or internally consistent").  Under this inquiry, the

10  court only determines whether the arbitrator decided issues that were actually before him to

11  decide.  *Michigan Mutual*, 44 F.3d at 831.  In other words, the inquiry is whether the

12  arbitrator had the power to resolve the issues addressed in its award.  *Id.*

13
14
15
16
17
18

> In sum, the Federal Arbitration Act allows a federal court to
> correct a technical error, to strike all or a portion of an award
> pertaining to an issue not at all subject to arbitration, and to
> vacate an award that evidences affirmative misconduct in the
> arbitral process or the final result or that is completely
> irrational or exhibits a manifest disregard for the law. These
> grounds afford an **extremely limited review authority**, a
> limitation that is designed to preserve due process but not to
> permit unnecessary public intrusion into private arbitration
> procedures.

19  *Kyocera*, 341 F.3d at 997-98 (emphasis added).  Where there are no grounds for vactaur,

20  modification, or correction of an award, a court <u>must</u> confirm the Arbitration Award under

21  the FAA.  9 U.S.C. § 9; *Hall Street*, 552 U.S. at 582.

22  ### V.  THE ARBITRATOR DID NOT EXCEED HIS POWERS AND THE

23  ### ARBITRATION AWARD SHOULD NOT BE VACATED

24  **A.     There Are No Statutory Grounds for Vacatur of the Arbitration Award and the**

25  **Court is Precluded from Re-trying this Dispute.**

26         None of the statutory grounds under the CAA or the FAA for vacatur of an

27  Arbitration Award are met here.  VSA does not argue there was fraud or corruption, or that

28  there was any bias or procedural improprieties that prejudiced its interests.  Instead, VSA is

-15-

improperly asking the Court to review the merits of the case, by re-examining relevant legal authorities and re-weighing the evidence. In short, says VSA, the Arbitrator "got it wrong." That is just not enough.

As explained above, VSA's request is improper because courts cannot review the merits of an underlying arbitration.  Courts cannot review an arbitrator's factual findings and legal conclusions.  And courts are prohibited from overturning an arbitrator's award because the court disagrees with the arbitrator's findings.  *See e.g. Bosack*, 586 F.3d at 1104 (courts are "prohibited" from reviewing "factual findings and legal conclusions" even when reviewing an arbitrator's decision for manifest disregard of the law).

VSA cannot deny it is improperly asking the court to weigh evidence – why else would it have filed a stack of exhibits more than a foot tall?  VSA is unhappy with the outcome of the arbitration and it is now attempting to re-try the dispute on the merits before this Court.  VSA agreed to arbitrate its disputes, and now it must abide by the outcome of the arbitration.  "The arbitrator's decision should be the end, not the beginning, of the dispute." *Moncharsh*, 3 Cal.4th at 10.

**B.      The Arbitrator's Well-Reasoned Award Shows that the Arbitrator Did Not Manifestly Disregard the Law.**

The only issue presented by VSA regarding the Arbitrator's alleged manifest disregard of the law is whether or not the Arbitrator manifestly disregarded the **law** in his determination that Defendants did not infringe VSA's copyrighted ValueSelling Program workbook by not applying the "extrinsic/intrinsic" copyright test in this Circuit.  The Arbitrator's detailed and well-reasoned Interim Award shows that the Arbitrator did not manifestly disregard the law, and in fact, even if he got it wrong (which he did not), that the Arbitrator *did* apply the "extrinsic/intrinsic" test.

As framed by VSA in its pre-hearing brief,[14] and reiterated by the Arbitrator in

---

[14]   And since it was submitted in VSA's pre-hearing brief, this issue should be conclusively determined to be "within the arbitrator's powers" under either the CAA or FAA.

-16-

his Interim Award, one issue before the Arbitrator was whether Defendants improperly infringed VSA's 1998 copyright of a ValueSelling Program workbook, which contains the ValuePrompter form and the Qualified Prospect Formula. (VSA Exs. A-0046, pp. 61-63; A-0225, p. 5.) VSA contends the Arbitrator manifestly disregarded the law because he acknowledged the required analysis under the "extrinsic/intrinsic" test, as discussed in *Mattel Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904 (9th Cir. 2010), and then chose to deliberately ignore it.

The two-part "extrinsic/intrinsic" test is used by courts in this Circuit to determine the similarity between two works in determining whether a copyrighted work is infringed. The "extrinsic/intrinsic" test is used to determine whether the infringing work is similar in <u>expression and ideas</u>. *See, e.g., Mattel*, 616 F.3d at 913-14. First, a court undergoes the extrinsic test, "examining the similarities between the copyrighted and challenged works and <u>then determine[s] whether the similar elements are protectable or unprotectable</u>." *Id.* (emphasis added). After the unprotectable elements are filtered out, what is left is the author's protectable expression of an idea. The extrinsic test is used to determine whether the intrinsic test is applied using the "substantial similarity" analysis or the "virtually identical" analysis. *Id.* The "virtually identical" analysis is used for "thin copyrights," where there is only a narrow range of possible expression. Second, the court undergoes the intrinsic test, asking whether a reasonable person would find the challenged work either "substantially similar" or "virtually identical" as to the <u>protectable</u> portions of the copyrighted work. *Id.*

VSA presents no evidence, by way of declaration or otherwise, which supports its claim that the Arbitrator acknowledged the "extrinsic/intrinsic" test, then deliberately chose to ignore it. Indeed, analysis of the Arbitrator's Interim Award shows that **the Arbitrator did apply the "extrinsic/intrinsic" test**. The Arbitrator found and held as follows:

1.  The issue was whether Defendants infringed VSA's 1998 copyrighted ValueSelling Program training manual. (VSA Ex. A-0225, p. 229.)

-17-

2.    In order to prevail on its claim, VSA had to prove it had a valid copyright and that the alleged copied elements were original.  Copying is proved by showing Defendants had access to the copyrighted material and that the infringing work is "<u>substantially similar in both expression and ideas</u>" to the copyrighted work. (*Id.*)

3.    Since it was undisputed that VSA had a copyright and Defendants had access to the copyrighted work, the issue was whether the challenged work is "substantially similar" or "virtually identical" to the copyrighted work. (*Id.* at p. 230.)

4.    The Arbitrator engaged in the extrinsic portion of the test, comparing the 1998 copyrighted workbook to ESG's alleged infringing work.  The Arbitrator stated "I find that some of the constituent parts are similar (*e.g.* the [Qualified Prospect Formula], [the ValuePrompter] graphic and case study materials), but the general organization, structure, sequence and language are different."  (*Id.* at p. 232.)

5.    As to those items that were similar – the ValuePrompter and the Qualified Prospect Formula – the Arbitrator either filtered them out as unprotectable, or, in other words, took the next step and applied the legal intrinsic test.[15]  The Arbitrator held as follows:

    a.    The ValuePrompter and Defendants' eNavigator "are not 'virtually identical' or even 'substantially similar,' as those terms are used in copyright law."  (*Id.* at p. 234).  The Arbitrator alternatively held that the ValuePrompter is not even copyrightable in and of itself because it

---

[15] As to the "case study material" that the Arbitrator found was similar, the Arbitrator held that VSA did not own the copyrights to the material it had incorporated into its workbooks, and thus it had no standing to sue for copyright infringement of them.  (VSA Ex. A-0225, pp. 236-38.)  Therefore, there was no need for the Arbitrator to engage in any infringement test.

1    is a "blank form" under relevant copyright law.  (*Id.*)[16]  In other words,

2    even if Defendants' eNavigator was substantially similar or virtually

3    identical to the ValuePrompter, it would be irrelevant because the

4    ValuePrompter is first filtered out as unprotectable (and therefore, there

5    would be no reason to reach the intrinsic test).

6        b.    The Qualified Prospect Formula is not copyright-protectable.  (*Id.* at pp.

7    234-35.)  Therefore, it is filtered out at the extrinsic stage and there is no

8    need to engage in the intrinsic portion of the test.

9    Contrary to VSA's contention, the Arbitrator did not act in manifest disregard

10   of the law.  Just because the Arbitrator did not specifically cite to *Mattel,* or place in bold

11   print, "**I am doing the extrinsic/intrinsic test!**" does not mean the Arbitrator manifestly

12   disregarded the law, let alone did not follow the law.  Indeed, the Arbitrator actually applied

13   the "extrinsic/intrinsic" test demanded by VSA.

14   An award "'should be enforced, despite a court's disagreement with it on the

15   merits, if there is a **barely colorable justification** for the outcome reached.'"  *Wallace,* 378

16   F.3d at 190 (emphasis in original).  There can be no argument that there is a "barely

17   colorable justification" for the outcome reached by the Arbitrator.  The Arbitrator reviewed

18   and weighed the significant evidence in the arbitration, applied the "extrinsic/intrinsic" test

19   which VSA claims is applicable, and explained his reasoning in his Interim Award.[17]  VSA

20   cannot seek a *de novo* review of the reasoning and the application of the law and fact in the

21   Arbitrator's Award.  For the foregoing reasons, VSA's request to vacate the Arbitration

22     [16]   VSA takes issue with the Arbitrator's reliance on the case of *Advanz Behavioral*

23   *Management Resources, Inc. v. Mariflor,* 21 F.Supp.2d 1179 (C.D. Cal. 1998) and his

    analysis of the ValuePrompter as a "blank form" under that case and related cases.  The

24       Arbitrator's decision in this regard is unassailable, but even if wrong, would be nothing

    more than an error of law, which is not a basis to overturn an arbitration award.

25     [17]   Arbitrators are not required to issue reasoned awards, and they are allowed to make awards

    without "explanation of their reasons and without a complete record of their proceeding."

26   *Bosack,* 586 F.3d at 1104.  Despite this fact, here, the Arbitrator made a completely

    reasonable and comprehensive explanation of his Award justified by his interpretation of

27       both the relevant facts and the evidence presented at the arbitration hearing.  VSA just does

    not like the outcome.

28

Case No. 09-CV-01493-JM-MDD
OPPOSITION TO VALUESELLING MOTION TO VACATE,
MODIFY, OR CORRECT ARBITRATION AWARD

1  Award should be denied.

2  **C.      The Arbitrator's Award Is Not Completely Irrational.**

3           VSA argues, as another basis for vacatur of the Arbitration Award, that the

4  Arbitrator's Award is "completely irrational" because it does not "draw its essence" from the

5  Settlement Agreement.  VSA makes the tortured argument that the Arbitrator was only

6  allowed to decide whether Defendants infringed VSA's copyrighted workbook, but not

7  allowed to decide whether the very portions of that workbook which VSA contended were

8  copied – including the ValuePrompter and the Qualified Prospect Formula – were

9  protectable.  That finding, argues VSA, is completely irrational.

10          It is not the Arbitrator's finding that is completely irrational in this case.

11  Instead, it is VSA's logic that is completely irrational and lacking any basis.  The Settlement

12  Agreement (as well as the other agreements between the parties) contains a broad arbitration

13  provision, granting the Arbitrator the power to adjudicate "***any*** dispute, controversy, or

14  question arising under, out of or relating to this Agreement or breach thereof for which the

15  moving party seeks money damages."  (VSA Ex. B-0339, p. 342, ¶ 12.)  VSA sued

16  Defendants for copyright infringement of its ValueSelling Program workbook, arguing that

17  Defendants copied its ValuePrompter by creating the eNavigator, and VSA's Qualified

18  Prospect Formula by creating the Prospect to Customer Formula, and sought money damages

19  (as well as other relief).  (VSA Federal Complaint (Doc. No. 1); VSA Ex. A-0036, pp. 38-39,

20  43; VSA Ex. A-0046, pp. 61-63; VSA Ex. A-0120, pp. 125-26, 128, 132-33.)  By the very

21  nature of its claim, VSA invited the Arbitrator to decide whether the ValuePrompter and the

22  Qualified Prospect Formula were copyright-protected because if they were part of a

23  copyright-protected work and not protectable, then the similarities between them and

24  Defendants' corresponding works would be meaningless.

25          Indeed, the Arbitrator decided that issue because he applied the

26  "extrinsic/intrinsic" test as VSA insisted that he do.  As explained above, and by VSA in its

27  own brief, the extrinsic portion of the test asks the arbitrator to compare the challenged work

28  to the copyrighted work in order to assess the similarities <u>and filter out the unprotectable</u>

-20-

1   portions of the work.  *Mattel*, 616 F.3d at 913-14.  As VSA had specifically argued, the

2   Arbitrator found that the similarities between VSA's copyrighted work and ESG's workbook

3   to be the ValuePrompter and the eNavigator, and the Qualified Prospect Formula and the

4   Prospect to Customer Formula.  But, in applying the law, the Arbitrator filtered out the

5   ValuePrompter and the Qualified Prospect Formula from VSA's copyrighted material

6   because he found that they are not protectable, and therefore, it is irrelevant whether the

7   eNavigator and the Prospect to Customer Formula are substantially similar or virtually

8   identical.  The Arbitrator's finding was inherent in his application of the "extrinsic/intrinsic"

9   test, and therefore it is drawn from the essence of the parties' dispute **as framed by VSA and**

10  **initiated under the Settlement Agreement by VSA**.

11          VSA cannot alone be heard to complain that this decision of the Arbitrator

12  came as any surprise to it.  In *Michigan Mutual*, the losing defendant to an arbitration sought

13  vacatur of an arbitration award on grounds that it was completely irrational because it was

14  not drawn from the essence of the contract.  44 F.3d at 830.  The defendant argued that the

15  arbitrator's award, which imposed conditions precedent on defendant's reimbursement under

16  the contract, should be vacated because the contract made no mention of such conditions,

17  and therefore, the award was not "drawn in essence" from the contract.  *Id.*  Finding against

18  the defendant, the Ninth Circuit stated that the contract gave the "arbitration panel broad

19  powers to fashion relief for issues submitted to it" because the contract stated that "any"

20  dispute was to be arbitrated, and it contained no limitation on the kinds of relief the

21  arbitration panel could award.  *Id.* at 831.  Where the contract does not limit an arbitrator's

22  power to fashion an award, an arbitrator is "'empowered to grant any relief reasonably fitting

23  . . . .'"  *Id.*

24          Even though the parties did not explicitly ask the arbitration panel to decide the

25  issue of reimbursement, that issue "necessarily arose" out of the arbitrator's decision and "the

26  parties must have been aware that an award" would include conditions of reimbursement.  *Id.*

27  at 830.  Therefore, the *Michigan Mutual* court said that because the arbitration panel was

28  "implicitly empowered" by the contract to formulate an appropriate award which included

1  issues of reimbursement, the award drew its essence of the contract.  *Id.* at 831.

2      As explained above, the same is true here.  VSA implicitly invited the

3  Arbitrator to assess whether the ValuePrompter and the Qualified Prospect Formula were

4  copyright-protectable portions of its workbooks.  VSA claims that Defendants copied those

5  portions of its workbooks.  Therefore, VSA must have known that the Arbitrator would

6  assess whether those portions were copyrightable under the applicable legal test.

7      The "completely irrational" basis for vacatur is "extremely" narrowly

8  construed.  *Comedy Club*, 553 F.3d at 1277.  So long as the Award is not "completely

9  irrational" when compared to the contract, the Court cannot vacate the Arbitrator's Award,

10  even if the Court finds that the Arbitrator's findings are incorrect.  *Bosack*, 686 F.3d at 1106.

11  Therefore, VSA's request that the Arbitrator's Award be vacated because it is "completely

12  irrational" should be denied.

13      **VI.  THERE ARE NO GROUNDS TO MODIFY OR**

14      **CORRECT THE ARBITRATION AWARD**

15      As an alternative, VSA requests that the Court correct or modify the

16  Arbitrator's Award by eliminating the Arbitrator's finding that the ValuePrompter and the

17  Qualified Prospect Formula are not copyright-protected.  VSA's argument is that the Court

18  can sever that portion of the Award pursuant to 9 U.S.C § 11(b), which allows correction or

19  modification of an award "where the arbitrators have awarded upon a matter not submitted to

20  them."[18]  VSA's request fails for two reasons.

21      First, VSA fails to satisfy the statutory ground for modification because the

22  Arbitrator did not make an Award upon a matter not submitted to him.  For the same reasons

23

24    [18]  VSA does not make an argument for correction under the CAA.  Presumably, VSA would

25  make the same arguments it makes under the FAA, pursuant to California Code of Civil
    Procedure § 1286.6(b), which allows for correction where "[t]he arbitrators exceeded their
    powers but the award may corrected without affecting the merits of the decision upon the

26  controversy submitted."  Here, VSA fails to prove the arbitrator exceeded his powers under
    the CAA and/or the FAA, therefore it cannot seek correction of the award under the CAA.

27  Moreover, VSA is precluded from seeking correction for the same reasons it is precluded
    under the FAA as articulated above.

28

1   articulated above that the Arbitrator did not manifestly disregard the law, and was not

2   completely irrational in his Award, VSA fails to show that the Arbitrator's finding that the

3   ValuePrompter and the Qualified Prospect Formula are not copyrightable was not submitted

4   for his review.

5              Second, this is simply an attempt by VSA to get through the back door what it

6   cannot get through the front door.  Virtually the entirety of VSA's case against Defendants

7   was based upon a claim of similarities in copyrighted workbook materials constituting the

8   ValuePrompter and the Qualified Prospect Formula.  To reverse the Arbitrator's findings on

9   this key point on the merits despite the submission of that dispute to him would completely

10  undermine the merits of the Arbitrator's Award and the public policy and law supporting

11  finality of arbitration awards.  If the Court overturns the Arbitrator's ruling regarding the

12  copyrightability of the ValuePrompter and the Qualified Prospect Formula, then VSA will be

13  free to sue Defendants every time Defendants use or slightly modify their eNavigator or

14  Prospect to Customer Formula, under the pretense that the new use or slight change

15  somehow makes them subject to a new claim for copyright infringement.  Indeed, VSA

16  essentially wants this Court to change the Arbitration Award to provide that Defendants (and

17  presumably others) cannot use its ValuePrompter or Qualified Prospect Formula.  But that is

18  not what the Award provides, and VSA has no right to obtain that kind of declaratory relief

19  from this Court.  The Award provides only that the ValuePrompter and the Qualified

20  Prospect Formula are not copyright-protectable, and that Defendants did not commit

21  copyright infringement in using an admittedly similar form and formula for their business.  If

22  VSA did not want this issue decided by a trier of fact, it should not have submitted this issue

23  to arbitration.

24              The Arbitrator recognized that if he did not fashion the Award in the manner

25  he did, VSA's ongoing and numerous disputes with Defendants would not end.  In order to

26  end these disputes once and for all, the Court must deny VSA's motion to correct or modify

27  the Arbitral Award.

28

## VII.  DEFENDANTS' CROSS-PETITION SHOULD BE CONFIRMED AND DEFENDANTS SHOULD BE AWARDED THEIR ATTORNEYS' FEES AND COSTS IN OPPOSING THIS MOTION

Because VSA has failed to prove any statutory grounds for vacatur, modification, or correction under either the CAA or FAA, and because the Arbitrator did not act in manifest disregard of the law or fashion a completely irrational award, this Court must deny this motion and affirm Defendants' Cross-Petition, issuing a judgment on the Award in favor of Defendants and against VSA.  Cal. Code Civ. Pro. § 1286; 9 U.S.C. § 9.

For the reasons stated in Defendants' Cross-Petition, Defendants also seek their attorneys' fees and costs incurred in opposing this motion based on the attorneys' fees provisions in the parties' Agreements.

Accordingly, a judgment should be entered by this Court confirming the arbitration Award in its entirety and awarding attorneys' fees and costs in the sum of $38,978.63 with regard to this motion, for a total judgment amount of $301,113.65, plus pre- and post-judgment interest.

## VIII.  CONCLUSION

There are no statutory grounds for vacatur, modification, or correction of the Arbitral Award under the CAA or the FAA.  Neither are there grounds to vacate the Award based on the Arbitrator's alleged manifest disregard of the law or alleged completely irrational award.  To the contrary, as explained herein, the Arbitrator properly and thoughtfully applied the legal test requested by VSA and decided all issues submitted to him for review.  Likewise, there are no grounds to modify or correct the Award by eliminating the Arbitrator's finding that VSA's ValuePrompter and Qualified Prospect Formula are not protected by copyright, because that issue was inherently submitted to the Arbitrator for review, and to hold otherwise would completely and negatively affect (and in fact in many ways reverse) the outcome of the controversy and allow VSA to continue to allege copyright infringement against Defendants.

-24-

1          VSA agreed to arbitrate its disputes and it must live with the consequences.

2  The parties to this case selected a fair, unbiased and excellent arbitrator, litigated this dispute

3  for a year, conducted voluminous discovery, took depositions, drafted multiple briefs, and

4  spent 10 days presenting their cases to the Arbitrator.  No "due process" was lacking.

5  Indeed, at the end of the hearing, the Arbitrator asked each side if they felt they had received

6  a fair hearing.  VSA said it had.  That was a true statement.

7          The Court should not allow this dispute to drag on any longer.  Courts do not

8  overturn arbitral awards lightly, and this should be no exception.  For the foregoing reasons,

9  Defendants respectfully request that the Court deny VSA's Motion and instead grant their

10 Cross-Petition to Confirm the Arbitration Award, entering Judgment in the form lodged

11 concurrently herewith.

12 Dated:  May 9, 2011         SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

13                 By        _____*s/ Robert S. Gerber*_____

14                            ROBERT S. GERBER

15                Attorneys for Cross-Petitioners and Defendants
                    KEVIN TEMPLE, and THE ENTERPRISE

16                       SELLING GROUP, LLC
               E-mail:  rgerber@sheppardmullin.com

17

18

19

20

21

22

23

24

25

26

27

28

-25-

1

<u>CERTIFICATE OF SERVICE</u>

2

3

The undersigned hereby certifies that a true and correct copy of the above and

foregoing document has been served on May 9, 2011 to all counsel who are deemed to have

4

consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

5

Any other counsel of record will be served by electronic mail, facsimile and/or overnight

6

delivery.

7

8

9

10

_s/ Robert S. Gerber_
ROBERT S. GERBER (SBN 137961)

11

E-mail:  rgerber@sheppardmullin.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-26-

Case No. 09-CV-01493-JM-MDD
OPPOSITION TO VALUESELLING MOTION TO VACATE,
MODIFY, OR CORRECT ARBITRATION AWARD