**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VALUESELLING ASSOCIATES, LLC, a California limited liability company; and SALES VISION, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>KEVIN TEMPLE, an individual; ENTERPRISE SELLING GROUP, form of entity unknown; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 09-CV-1493-JM (MDD)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR ATTORNEYS' FEES AS MODIFIED**<br><br>Doc. No. 19 |

Plaintiffs ValueSelling Associates, LLC ("VSA") and Sales Vision, LLC ("SVL") filed the instant suit in federal court on July 9, 2009 against Defendants Kevin Temple and Enterprise Selling Group ("ESG"), alleging various causes of action related to Plaintiffs' purchase of certain trademarked and copyrighted material from Defendants and a related consultancy agreement between the parties. (Doc. No. 1.) Defendants filed a motion for an order to compel arbitration and dismiss the case, based on the arbitration clauses contained in three different contracts between the parties. (Doc. No. 4.) The court granted Defendants' motion. (Doc. No. 11.) Defendants now move the court to recover attorneys' fees and costs incurred in connection with their successful motion to compel arbitration. (Doc. No. 19.)

Pursuant to CivLR 7.1(d), the court determines this matter is appropriate for resolution without oral argument. For the reasons set forth below, the court hereby GRANTS Defendants' motion, subject to the modifications described herein.

**I.      BACKGROUND[1]**

Plaintiffs are the owners of certain trademarked and copyrighted materials comprising a process known as the ValueSelling Program. Plaintiffs initially signed a contract to acquire the ValueSelling Program from Defendant Temple and his co-owners in June 2003 (the "Purchase Agreement"). The parties subsequently entered into another agreement in July 2003, whereby Temple was to remain on as an independent consultant to SVL for the next three years (the "Consultancy Agreement"). However, a dispute arose between Plaintiffs and Temple in July 2007. The parties agreed to a settlement that would terminate their relationship (the "Confidential Settlement Agreement"). Plaintiffs nevertheless brought suit against Temple and ESG—a company that Temple formed in 2007—in July 2009, claiming that Defendants misappropriated Plaintiffs' trade secrets and infringed upon certain of Plaintiffs' intellectual property rights.

On September 3, 2009, Defendants moved for an order compelling Plaintiffs to submit their dispute to arbitration and dismissing the case. (Doc. No. 4.) Defendants' motion was based on the arbitration clauses contained in the Purchase Agreement, Consultancy Agreement, and Confidential Settlement Agreement. On November 5, 2009, the court granted Defendants' motion and dismissed the case. (Doc. No. 11.) Plaintiffs subsequently commenced arbitration proceedings against Defendants, during which Defendants sought to recover attorneys' fees and costs incurred in connection with their motion to compel arbitration. (See Doc. No. 18 p.2.) However, after the arbitrator declined to exercise jurisdiction over the matter, Defendants were able to reopen the case before this court for the limited purpose of bringing a motion for attorneys' fees. (Id. at p.8.) That motion is now before the court. (Doc. No. 19.)

//

---

[1] All relevant facts regarding events up to the date of the court's ruling on Defendants' motion to compel arbitration are taken from the court's November 5, 2009 order. (Doc. No. 11.)

## II. DISCUSSION

There appears to be no contention over the fact that Defendants are entitled to recover attorneys' fees based on their successful motion to compel arbitration. (See Doc. No. 19-1 pp. 5-6; Doc. No. 20 p.1.) Rather, the parties' disagreement centers on what amount is "reasonable" under the circumstances.

In California, "[i]t is well settled that a trial court is vested with wide discretion in fixing the amount to be awarded to a prevailing party for attorneys' fees."[2] Rogel v. Lynwood Redevelopment Agency, No. B219626, 2011 WL 1632038 at *1 (Cal. Ct. App. May 2, 2011). In making this determination, the court

> ordinarily begins with the "lodestar," i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. . . . The reasonable hourly rate is that prevailing in the community for similar work. The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided. Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary.

PLCM Grp. v. Drexler, 22 Cal. 4th 1084, 1095 (2000).

Here, Defendants request a total of $26,340 in fees. (Doc. No. 19-1 p.7.) This figure includes both the expense of bringing the motion to compel arbitration itself ($20,090) as well as the costs associated with the instant motion for fees ($6,250). (Id. at pp. 6-7.) According to Defendants, two attorneys from the law firm of Ravin Glovinsky, LLP worked on their case. (Id. at p.6.) The requested fee award was arrived at using a straightforward calculation of the number of hours expended by each of the two attorneys, multiplied by each attorney's respective billing rate. (Id.) Specifically, in bringing the motion to compel arbitration, lead counsel Jason L. Glovinsky worked a total of 46.4 hours, while attorney William W. Ravin worked 7.7 billable hours.[3] (Id.) In addition, Mr. Glovinsky had already spent 12 hours, and

---

[2] As Defendants' entitlement to attorneys' fees in this matter is governed by certain provisions contained within the various contracts between the parties (see Doc. No. 19-1 pp. 2-3), the calculation of the amount of the fee award is governed by California law.

[3] Mr. Ravin worked a total of 8.2 hours on the matter, but 0.5 hours of that work were performed free of charge. (Doc. No. 19-1 p.6 n.4.)

1  Mr. Ravin 1 hour, researching, drafting, and filing the instant motion at the time it was filed.
2  (Id. at pp. 6-7.) Moreover, Defendants anticipated that Mr. Glovinsky would spend an
3  additional 3 hours and Mr. Ravin an additional 1 hour reviewing Plaintiffs' opposition and
4  preparing reply papers.[4] (Id. at p.7.) According to Defendants, Mr. Glovinsky's billing rate
5  during this period was $350 per hour, while Mr. Ravin's rate was $500 per hour. (Id. at p.6.)
6  These rates were supported by an accompanying declaration provided by Mr. Glovinsky, in
7  which he set forth both his and Mr. Ravin's background and qualifications. (Doc. No. 19-2
8  ¶ 9.) Mr. Glovinsky states that he has practiced law in California for about 21 years and
9  specializes in business litigation. (Id.) His partner Mr. Ravin has practiced in California for
10  about 39 years. (Id.) According to Mr. Glovinsky, he is "confident that the rates and time
11  charged by [his] firm for this case are reasonable under the circumstances." (Id.)

12  Thus, the fee request is calculated based on a total of 61.4 hours (46.4 + 12 + 3) worked
13  by Mr. Glovinsky at a rate of $350 per hour, and 9.7 hours (7.7 + 1 + 1) worked by Mr. Ravin
14  at a rate of $500 per hour. (Doc. No. 19-1 pp. 6-7.) The total amount of $26,340 requested by
15  Defendants is therefore their proposed lodestar. Defendants do not request any enhancements
16  or adjustments to that lodestar figure.

17  Plaintiffs object to Defendants' calculations on several grounds. First, Plaintiffs argue
18  that the number of hours spent by Defendants' attorneys in preparing and filing the motion to
19  compel arbitration is excessive and unsubstantiated. (Doc. No. 20 pp. 3-4.) Plaintiffs
20  characterize Defendants' motion to compel arbitration as "relatively simple" and argue that,
21  as experienced litigators, Defendants' attorneys should have been "more efficient" in the use
22  of their time. (Id. at p.4.) Plaintiffs also point out that several of the line items in the billing
23  invoices submitted by Defendants in support of their motion relate to work product that was

---

[4] As part of Defendants' reply, Mr. Glovinsky submitted a declaration stating that he had in fact "spent *considerably more* than an additional three (3) hours of time reviewing [Plaintiffs'] opposition to this motion and preparing reply papers." (Doc. No. 22-1 4 (emphasis added).) However, Mr. Glovinsky does not say exactly how many hours he worked on the reply, nor does he offer a revised fee request taking into account the time spent above and beyond his original estimate. In addition, neither Defendants nor Mr. Glovinsky make any mention of the actual number of hours spent by Mr. Ravin on the reply, and whether it was above or below their original estimate of 1 hour.

1  never used. (Id. at p.5.) For example, on September 2-3, 2009, Mr. Ravin billed Defendants
2  for a total of 3.9 hours, part of which was spent preparing an answer to Plaintiffs' complaint
3  that was ultimately never filed. (See Doc. No. 19-2 Exh. E, "Billing Invoices," p.E-21.) In
4  addition, Plaintiffs take issue with Defendants' attorneys' practice of "block billing," which
5  they claim "makes it impossible to determine how much time was spent on each task within
6  [each] entry" on the invoice, and with the numerous redactions of the invoices themselves,
7  some of which completely obscure the nature of the work performed. (Doc. No. 20 pp. 5-6;
8  see, e.g., Billing Invoices at p.E-19 (listing a 0.90 hour block of time worked by Mr. Ravin
9  described only as "[a]nalysis of [REDACTED]" on August 11, 2009).) According to Plaintiffs,
10 the records as presented to the court are simply too vague to support the fee award requested.
11 Finally, Plaintiffs contest Defendants' request for $6,250 in fees related to the instant motion.
12 (Doc. No. 20 p.6.) Plaintiffs argue that not only have Defendants provided no invoices or
13 billing statements to verify their claim of the number of hours worked by counsel on the
14 motion for fees, but the number of hours claimed "is unreasonable for a standard,
15 uncomplicated motion." (Id.) Plaintiffs again emphasize Mr. Glovinsky's and Mr. Ravin's
16 backgrounds, arguing that counsel "are experienced litigators who undoubtedly bring motions
17 for fees on a regular basis." (Id.)

18 Second, Plaintiffs claim that the hourly rate charged by Defendants' attorneys is also
19 unreasonable. Plaintiffs argue that Defendants bear the "initial burden of producing
20 satisfactory evidence that attorneys of similar experience in the legal community are billing
21 paying clients for similar work at the rates [Defendants] seek[]." (Id. at p.7.) According to
22 Plaintiffs, Defendants have failed to satisfy this burden, producing only "conclusory
23 statement[s]" from their counsel that the rates charged are reasonable. (Id.) Plaintiffs also
24 highlight several recent decisions from other courts in this district, in which lower hourly rates
25 were deemed reasonable. (Id. at p.8.)

26 In their reply, Defendants argue that Plaintiffs have mischaracterized their motion to
27 compel arbitration as a "relatively standard," "off the shelf" motion. (Doc. No. 22 p.4.)
28 Defendants claim that in light of the seriousness of Plaintiffs' underlying claims, Plaintiffs'

1  refusal to stipulate to arbitration, and the vehemence with which Plaintiffs opposed
2  Defendants' motion to compel arbitration, the extensive time spent on that motion was merited.
3  (Id. at pp. 2-4.) Defendants also point to a California Court of Appeals case, Acosta v.
4  Kerrigan, in which the court upheld an award of $60,000 in attorneys' fees based on the
5  defendant's successful motion to compel arbitration in that case. (Id. at p.4.)

6  Defendants also address some of Plaintiffs' specific criticisms of Mr. Glovinsky's and
7  Mr. Ravin's billing practices. With regard to the contention that not all of the work listed in
8  the billing statement was relevant to the motion to compel arbitration, Defendants argue that
9  the time spent by counsel in drafting an answer that was ultimately never filed was also useful
10 in "help[ing] to determine, among other things, whether the claims were covered by the
11 arbitration claims." (Id. at p.5.) Defendants also claim that their failure to file an invoice
12 detailing the work done on the instant motion for fees was justified because counsel's firm
13 only prepares invoices at the beginning of each month for the prior month's work. (Id. at p.6.)
14 Defendants have attached to their reply a copy of their billing statement from February of
15 2011, in which the hours worked by Mr. Glovinsky and Mr. Ravin on the initial motion for
16 attorneys' fees are now set forth. (Id. at Exh. F, p.F-27.)

17 After careful consideration of the motion to compel arbitration and the instant motion
18 for attorneys' fees, a total of **16 hours** at a rate of **$350 per hour** appears reasonable under the
19 circumstances.

20  **A.   Motion to Compel**

21  A review of the original motion to compel arbitration shows it to be a standard motion
22 to compel without any complex or challenging analysis, predicated upon three separate
23 agreements that each clearly call for arbitration. The motion consists primarily of a
24 Memorandum of Points and Authorities that is less than ten full pages, the first four of which
25 merely recite the applicable arbitration language from the operative agreements. Three-plus
26 pages of analysis then follow, primarily citing general principles of arbitration; an analysis of
27 one unpublished District Court case, Conwest Res., Inc. v. Playtime Novelties, Inc., 2007 U.S.
28 Dist. Lexis 35585, No. C 06-5304 (N.D. Cal. May 1, 2007); and a conclusion that is

unassailable given the slam-dunk principles recited. Attached are exhibits consisting of Mr. Glovinsky's declaration (less than two pages) and copies of the operative agreements.

Given the straightforward and economical nature of this irrefutable motion, no more than 10 hours of attorney time at $350 per hour (Mr. Glovinsky's rate) were necessary to prepare and review the original motion. The court concludes that it was unnecessary to have two attorneys prepare this standard motion and that a reasonable rate for someone of Mr. Glovinsky's experience is, as requested, $350 per hour.[5]

### B.  Motion for Attorneys' Fees

Many of the same considerations also apply to the instant motion for fees. The issues presented to the court are simple and uncomplicated. The seven-page Memorandum of Points and Authorities consists of one caption page, followed by a recitation of the relevant attorneys' fees provisions of two of the agreements, a concise and straightforward presentation of the basic governing legal principles demonstrating Defendants' unquestionable entitlement to fees in this matter, and a brief description of the number of hours each attorney actually expended on each motion. (Doc. No. 19-1.) Attached to the motion are a basic three-page declaration providing the essential information regarding the number of hours worked and rates charged for the work performed, copies of each of the applicable agreements, a copy of this court's own

---

[5] It should be noted that Plaintiffs' assertion that Defendants are required *as a matter of law* to provide evidence of comparable rates for other attorneys in the same legal community is incorrect. Plaintiffs rely on a U.S. Supreme Court case, Blum v. Stenson, in which the Court noted that "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." 465 U.S. 886, 895 n.11 (1984). However, what Plaintiffs fail to appreciate is that Blum dealt specifically with the issue of determining a reasonable "market rate" for an attorney's services in the context of a claim for fees under 42 U.S.C. § 1988, a provision providing for legal fees in cases brought to enforce certain civil rights laws. The Blum Court recognized that, unlike a typical case in which a litigant is charged at "the lawyer's customary rate," which is "discussed with the client[] [and] may be negotiated," the determination of fees in a § 1988 case is "entirely different"; in those cases, "there is no negotiation or even discussion with the prevailing client as the fee . . . is paid by the losing party." Id. Therefore, the Court found it appropriate to require attorneys under those circumstances to "justify the reasonableness of [their] requested rate or rates." Id. However, that situation is wholly distinguishable from the one here, where Defendants had already negotiated with and agreed to pay counsel a certain hourly rate for their services before they were rendered, and before this motion was even contemplated.

order granting Defendants' motion to compel arbitration, and each attorney's billing invoices. (Doc. No. 19-2 and Exhs.)

Based on the above analysis, the court concludes that one attorney of Mr. Glovinsky's experience, billing at a rate of $350 per hour, would reasonably require no more than 6 hours to prepare and review an attorneys' fees motion of this length and quality.

### III. CONCLUSION

For the reasons set forth above, the court finds that Defendants are entitled to a total of **$5,600** in attorneys' fees for the work performed on both the successful motion to compel arbitration and the instant motion for fees.

**IT IS SO ORDERED.**

DATED: June 10, 2011

_____
Hon. Jeffrey T. Miller
United States District Judge