# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALUESELLING ASSOCIATES, LLC, a California limited liability company; and SALES VISION, LLC, a California limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>KEVIN TEMPLE, an individual; ENTERPRISE SELLING GROUP, form of entity unknown; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 09-CV-1493-JM (MDD)<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO VACATE, MODIFY, OR CORRECT ARBITRATION AWARD; AND GRANTING DEFENDANTS' CROSS-PETITION TO CONFIRM ARBITRATION AWARD**<br><br>Doc. Nos. 63 & 64 |

Plaintiffs ValueSelling Associates, LLC ("VSA") and Sales Vision, LLC ("SVL") filed the instant suit in federal court on July 9, 2009 against Defendants Kevin Temple and Enterprise Selling Group ("ESG"), alleging various causes of action related to Plaintiffs' purchase of certain trademarked and copyrighted materials from Defendants and the subsequent dissolution of the working relationship between the parties. (Doc. No. 1.) After Defendants successfully moved to compel arbitration in the matter, the parties submitted their dispute to an arbitrator, who issued a final award in favor of Defendants. (Doc. No. 64-1 pp. 5-6.) Plaintiffs now move this court for an order vacating, modifying, or correcting the arbitrator's award. (Doc. No. 64.) Defendants have filed a cross-petition requesting that the court confirm the arbitration award. (Doc. No. 63.) In addition, Defendants have filed a motion

to strike certain portions of the arbitration hearing transcript submitted by Plaintiffs in support of their motion. (Doc. No. 66.)

Pursuant to CivLR 7.1(d)(1), the court determines this matter is appropriate for disposition without oral argument. For the reasons set forth below, the court upholds the arbitrator's decision, DENYING Plaintiffs' motion and GRANTING Defendants' cross-petition. In addition, because the hearing transcript is irrelevant to deciding Plaintiffs' motion, the court also DENIES Defendants' motion to strike as moot.

**I.   BACKGROUND**

Plaintiffs are the owners of certain trademarked and copyrighted materials comprising a sales training process known as the ValueSelling Program. (Doc. No. 1, "Complaint," ¶¶ 11, 35, 37-41.) The ValueSelling Program is a collection of several separately trademarked components, including the ValuePrompter—a one-page form summarizing the ValueSelling approach that is designed to be filled out by end users of the ValueSelling system—and the Qualified Prospect ("QP") Formula—a tool for identifying and diagnosing prospective customers. (Id. ¶¶ 19-20, 23, 24-26.)

Plaintiffs initially signed a contract to acquire the ValueSelling Program from Defendant Temple and his co-owners (the "Purchase Agreement") in June 2003, as part of which Temple was permitted to continue training businesses on the ValueSelling methodology as a licensee (the "License Agreement"). (Id. ¶¶ 36-42.) Temple also agreed to remain on as an independent consultant to SVL for the next three years (the "Consultancy Agreement"). (Id. ¶ 43.) However, a dispute arose between Plaintiffs and Temple in July 2007, and the parties agreed to a settlement that would terminate their relationship (the "Settlement Agreement"). (Id. ¶¶ 47-48.)

Plaintiffs brought suit against Temple and ESG—a company that Temple formed in 2007—on July 9, 2009, claiming that Defendants misappropriated Plaintiffs' trade secrets and infringed upon certain of Plaintiffs' intellectual property rights. (Id. ¶¶ 51-64.) Specifically, Plaintiffs claim that Temple, through ESG, began marketing a product in 2007 called the Enterprise Value Selling program, which is substantially identical to the ValueSelling

Program. (Id. ¶¶ 55-58.) Plaintiffs therefore sought injunctive relief as well as compensatory and punitive damages. (Id. at pp. 23-29.)

On September 3, 2009, Defendants moved for an order compelling Plaintiffs to submit their dispute to arbitration and dismissing the case. (Doc. No. 4.) Defendants' motion was based on the arbitration clauses contained in the Purchase Agreement, Consultancy Agreement, and Confidential Settlement Agreement. (Id.) On November 5, 2009, the court granted Defendants' motion and dismissed the case. (Doc. No. 11.)

Plaintiffs subsequently commenced arbitration proceedings against Defendants on January 5, 2010. (Doc. No. 64-1 p.4.) Defendants in turn filed several counterclaims against Plaintiffs. (Id.) The arbitration proceeded over the course of the next year, during which time the parties had the opportunity to submit arguments, offer evidence, and explain their version of the facts to the arbitrator in the form of both pre- and post-hearing briefs, as well as at a fifteen-day evidentiary hearing. (Id. at pp. 4-5.) In addition, after unsuccessfully moving for a preliminary injunction, Plaintiffs were permitted to file a Specification of Claims with the arbitrator, describing their claims in greater detail. (Id. at p.4.) On January 6, 2011, the arbitrator issued his Interim Award, concluding that Defendants had not infringed on any of Plaintiffs' copyrights. (Id. at p.5.) In addition, the Interim Award found that neither the ValuePrompter nor the QP Formula was entitled to copyright protection, and that Plaintiffs had no standing to assert a claim for copyright infringement based on Defendants' alleged copying of certain client-specific ValuePrompters. (Id. at pp. 5-6.)

Plaintiffs filed a motion requesting that the arbitrator reconsider his Interim Award, which Defendants moved to dismiss, arguing lack of jurisdiction. (Id. at p.6.) The arbitrator ultimately declined to hear the motion, claiming that the motion "request[ed] major substantive modifications of the Interim Award" which he could not address. (Id.) The arbitrator's Final Award was issued on March 16, 2011, affirming the substance of the Interim Award. (Id.)

Plaintiffs now move this court to vacate, modify, or correct the arbitrator's Final Award. (Doc. No. 64.) Defendants oppose this motion, and have filed a cross-petition to affirm the

1 Award, as well as a motion to strike certain portions of the arbitration hearing transcript filed
2 by Plaintiffs. (Doc. Nos. 63 & 66.)

**II.    LEGAL STANDARD**

   **A.    Choice of Law**

As a preliminary matter, the parties disagree as to whether this court should apply federal or state law in deciding whether to confirm the arbitration award. While Plaintiffs' motion is based on the standards set forth in the Federal Arbitration Act ("FAA") (Doc. No. 64-1 pp.6-7), Defendants argue that the award should be reviewed under the California Arbitration Act ("CAA") (Doc. No. 68 pp. 9-10).

In cases seeking review of an arbitration award in federal court, there is a "strong default presumption . . . that the FAA, not state law, supplies the rules for arbitration." Sovak v. Chugai Pharm. Co., 280 F.3d 1266, 1269 (9th Cir. 2002). Parties wishing to be bound by state law rules instead "must clearly evidence their intent to be bound by such rules" as part of their arbitration agreement. Id.; see also Johnson v. Gruma Corp., 614 F.3d 1062, 1066 (9th Cir. 2010). This burden is not satisfied by a "general choice-of-law provision"; rather, the parties must explicitly state their intent to incorporate California law *as it relates to arbitration*. Compare Johnson, 614 F.3d at 1067 (finding CAA applicable where contract specifically required arbitration to be "conducted and subject to enforcement pursuant to the provisions of California Code of Civil Procedure section 1280 through 1295 [the CAA]"), with Fid. Fed. Bank, FSB v. Durga Mar Corp., 386 F.3d 1306, 1312 (9th Cir. 2004) (finding FAA controlling where arbitration clause merely stated that "[d]isputes or controversies shall be submitted to and resolved by binding arbitration in accordance with the laws of the State of California and the rules of the American Arbitration Association").

As the Ninth Circuit cases cited above illustrate, the contractual provisions relied on by Defendants are "general choice-of-law provisions" that do not clearly evince an intent to incorporate CAA standards. (See Doc. No. 68 p.10; see also Doc. No. 64 Exh. B at pp. 341-42 ("This Agreement is executed pursuant to, intended to be performed under, and shall be governed in its interpretation and effect by the laws of the State of California."); id. at p.727

1  ("This Agreement is entered into in San Diego, California and shall be governed for all
2  purposes by the laws of California."); id. at p.997 ("This Agreement shall be governed by and
3  construed in accordance with the laws of the State of California. Any dispute, controversy, or
4  question arising under, out of or relating to this Agreement . . . shall be submitted to the
5  American Arbitration Association ('AAA') for arbitration in the State of California in San
6  Diego, California. The proceeding shall be governed by the AAA Commercial Rules then in
7  effect.").) None of the arbitration clauses make explicit reference to the CAA or the application
8  of California law specifically in the context of arbitration. Therefore, the presumption in favor
9  of applying the FAA stands, and federal rules govern whether the arbitration award should be
10  upheld in this case.

11  **B.  FAA Standards**

12  Federal review of an arbitration award "is both limited and highly deferential." <u>Comedy
13  Club, Inc. v. Improv West Assocs.</u>, 553 F.3d 1277, 1288 (9th Cir. 2009) (quoting <u>Poweragent
14  Inc. v. Elec. Data Sys. Corp.</u>, 358 F.3d 1187, 1193 (9th Cir. 2004)). Under the FAA, a court
15  *must* confirm an arbitration award unless it finds specific statutory grounds to vacate, modify,
16  or correct it. 9 U.S.C. §§ 9-11; <u>see also</u> <u>Hall St. Assocs., L.L.C., v. Mattel, Inc.</u>, 552 U.S. 576,
17  582 (2008). "Section 10 [of the Act] lists grounds for vacating an award, while § 11 names
18  those for modifying or correcting one." <u>Hall St. Assocs.</u>, 552 U.S. at 582. However, relief is
19  appropriate only in extreme circumstances, and "[n]either erroneous legal conclusions nor
20  unsubstantiated factual findings justify" disturbing an arbitral award under either of these
21  statutes.

22  Section 10(a)(4) of the FAA authorizes district courts to vacate an arbitration award
23  "where the arbitrators exceeded their powers." This can be said to occur in one of two ways:
24  first, "when they express a 'manifest disregard of law,'" and second, "when they issue an
25  award that is 'completely irrational.'" <u>Bosack v. Soward</u>, 586 F.3d 1096, 1104 (9th Cir. 2009)
26  (quoting <u>Comedy Club</u>, 553 F.3d at 1290). Both are extremely narrow standards. "[M]anifest
27  disregard . . . requires something beyond and different from a mere error in the law or failure
28  on the part of the arbitrators to understand and apply the law." <u>Id.</u> (quoting <u>Collins v. D.R.

1 Horton, Inc., 505 F.3d 874, 879 (9th Cir. 2007)). Rather, "[t]here must be some evidence in the record, other than the result, that the arbitrators were aware of the law and ***intentionally*** disregarded it." Id. (quoting Lincoln Nat'l Life Ins. Co. v. Payne, 374 F.3d 672, 675 (8th Cir. 2004)) (emphasis added). Similarly, an arbitration decision is only "completely irrational" where it "fails to draw its essence from the agreement." Comedy Club, 553 F.3d at 1288. "An award 'draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions.'" Bosack, 586 F.3d at 1106 (quoting McGrann v. First Albany Corp., 424 F.3d 743, 749 (8th Cir. 2005)).

In addition, under 9 U.S.C. § 11(b), a district court may modify or correct an award "[w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted." This provision permits courts to "strike all or a portion of an award pertaining to an issue not at all subject to arbitration." Kyocera Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987, 997-98 (9th Cir. 2003). However, the scope of this review is still "extremely limited," "designed to preserve due process but not to permit unnecessary public intrusion into private arbitration process." Id. at 998.

**III.   DISCUSSION**

Plaintiffs take issue with two aspects of the arbitrator's ruling: First, Plaintiffs argue that the arbitrator failed to apply the proper test for determining the existence of copyright infringement as articulated by the Ninth Circuit in the 2010 case Mattel, Inc. v. MGA Entm't, Inc. (Doc. No. 64-1 pp. 8-22.) Second, Plaintiffs claim that the arbitrator issued a ruling on a matter outside of the scope of the case when he found that neither the ValuePrompter nor the QP Formula was entitled to individual copyright protection. (Id. at pp. 22-24.)

**A.   Failure to Apply Mattel**

According to Plaintiffs, the Mattel case sets forth a two-part "extrinsic/intrinsic" test for determining whether one work infringes on the copyright of another. (Id. at p.8.) Plaintiffs argue that, although it cited extensively to Mattel in both its pre-and post-hearing briefs, the

1  arbitrator chose to ignore the governing law, instead "creat[ing] his own 'test'" and using that
2  to determine (incorrectly) that no copyright infringement had occurred. (Id. at pp. 8-9.)

3  Defendants contend that the arbitrator *did* in fact apply the extrinsic/intrinsic test from
4  Mattel, and applied it correctly in arriving at his conclusion. (Doc. No. 68 pp. 17-19.)
5  Defendants further argue that the arbitrator's failure to specifically cite to Mattel does not
6  necessarily mean that he ignored or defied that case law. (Id. at p.19.)

7  As discussed above, manifest disregard requires more than a merely incorrect
8  application of law; the record must demonstrate an *intentional* disregard. Specifically, "the
9  moving party must show that the arbitrator ***underst[oo]d and correctly state[d] the law***, but
10 proceed[ed] to disregard the same.'" Bosack, 586 F.3d at 1104 (emphasis added); see also
11 id. ("It must be clear from the record that the arbitrators ***recognized*** the applicable law ***and***
12 ***then ignored it***." (emphasis added)). Here, as Plaintiffs themselves admit, the arbitrator did not
13 cite to Mattel at all in either his Interim or Final Award. (Doc. No. 64-1 p.9.) Their only
14 evidence of the arbitrator's alleged manifest disregard of Mattel is their own repeated citations
15 to the case in their briefs, and the arbitrator's failure to discuss it explicitly in his order. This
16 does not amount to manifest disregard of the law under the FAA. Assuming Mattel is
17 applicable and controlling in the instant case (which both parties appear to concede), it is
18 entirely possible that the arbitrator read Mattel and applied or attempted to apply it without
19 citing to it directly, as Defendants contend, or that the arbitrator's understanding of the case
20 was simply incorrect and that he believed it to be inapplicable or distinguishable. The
21 arbitrator's failure to cite to Mattel is ambiguous at best. Indeed, Plaintiffs' version of
22 events—that the arbitrator intentionally chose to ignore Mattel, knowing that it was controlling
23 law—is the least plausible explanation, given that Plaintiffs are unable to offer any explanation
24 as to *why* the arbitrator would choose to act in such a biased and malicious manner. (See id.
25 at p.25 ("Given that VSA has no direct evidence of Arbitrator bias, the reason why the
26 Arbitrator chose to manifestly disregard the law . . . is unknown . . . .").) Moreover, the Ninth
27 Circuit has held that

28  [a]rbitrators are not required to set forth their reasoning supporting an award. An arbitrators' "award may be made without explanation of their reasons and

> without a complete record of their proceedings[.]" "If they choose not to do so, it is ***all but impossible*** to determine whether they acted with manifest disregard for the law."

Bosack, 586 F.3d at 1104 (quoting Wilko v. Swan, 346 U.S. 427, 469 (1953) and Dawahare v. Spencer, 210 F.3d 666, 669 (6th Cir. 2000)) (emphasis added). Thus, for purposes of determining whether vacatur is appropriate under § 10(4)(a), an arbitrator's silence on an issue carries no weight.

In addition, it should be noted that many of the arbitrator's findings that Plaintiffs call into question are findings of fact, as opposed to applications of law. For example, Plaintiffs argue that the arbitrator found that the ValueSelling training manual was a "compilation" under copyright law, despite the fact that "no evidence was presented at the hearing that any part of the content of the 1990, 1998, or 2005 Copyrights was compiled from the work of a third party."[1] (Doc. No. 64-1 p.10; see also id. at p.15 ("Although [the arbitrator] stated that '[t]he 1998 copyright is a collection of parts, some of which are original . . . ,' he never identified the 'original parts.'").) Similarly, Plaintiffs object to the arbitrator's refusal to accept their experts' testimony that Defendants' products were virtually identical to their own. (Id. at pp. 11-15.) However, even if these factual findings are erroneous, they cannot justify vacating an arbitral award under the FAA. See Kyocera, 341 F.3d at 994 ("Neither erroneous legal conclusions ***nor unsubstantiated factual findings*** justify federal court review of an arbitral award under the [FAA], which is unambiguous in this regard." (emphasis added)).

Thus, even if the arbitrator did improperly fail to apply the extrinsic/intrinsic test of Mattel, this court does not have grounds to vacate the award for this reason, based on the record before it The court therefore need not reach the issue of whether the arbitrator's underlying decision was correct.

//

---

[1] Plaintiffs have submitted a full transcript of the entire arbitration hearing "as evidence that no evidence was presented" on the issue of whether the manual was a compilation. (Doc. No. 64-1 p.10 (original emphasis); see also Doc. No. 64 Exh. C.) However, because this aspect of the arbitrator's decision is not subject to this court's review (see infra), examination of the transcript is unnecessary in order to rule on Plaintiffs' motion. Therefore, the court DENIES AS MOOT Defendants' motion to strike.

### B. Denial of Individual Copyright Protection for ValuePrompter and QP Formula

Plaintiffs also argue that the arbitrator's decision "violated the essence test" because parts of that decision fall outside of the scope of the actual dispute. (Doc. No. 64-1 pp. 22-24.) Specifically, the arbitrator determined, *inter alia*, that neither the ValuePrompter form nor the QP Formula was entitled to individual copyright protection; however, according to Plaintiffs, the arbitrator was only presented with the question of whether Defendants had infringed on Plaintiffs' copyrighted training manuals *as a whole*. (Id. at p.23.) In other words, although the ValuePrompter form and the QP Formula were each components of the manuals in question, Plaintiffs never alleged that Defendants infringed on them as stand-alone concepts. Plaintiffs therefore request that the court either vacate the arbitration award under § 10(a)(4), or correct it under § 11 by excising the portion of the award that contains this finding. (Id. at pp. 22-23.)

Defendants claim that the arbitrator's ruling on ValuePrompter and the QP Formula as individual elements *was* "drawn from the essence of the parties' dispute" because it was simply a finding made in the course of the arbitrator's application of the Mattel extrinsic/intrinsic test. (Doc. No. 68 pp. 20-21.) Although the matter was not explicitly put before the arbitrator, Defendants argue that the existence of separate copyright protection for the ValuePrompter form and the QP Formula was necessarily implicit in Plaintiffs' demand for relief, and therefore within the scope of the arbitrator's authority to decide. (Id. at pp. 21-22.)

Initially, it should be noted that Plaintiffs are not entitled to modification or correction of the arbitral award under a plain reading of the language of § 11(b).[2] As part of their argument, Plaintiffs claim that "[t]he award can be corrected, as allowed under 9 U.S.C. § 11, to remove the offending portion . . . ***without affecting the merits of the controversy***, i.e., the Arbitrator's finding that Temple has not infringed upon VSA's copyrighted works, and the resulting award based thereon." (Doc. No. 64-1 p.23 (emphasis added).) However, § 11(b)

---

[2] Although Plaintiffs only cite to § 11 generally, the substance of their argument for relief indicates that their request falls under subsection (b). See 9 U.S.C. §§ 11(a) & (c) (permitting modification or correction of the award "[w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award," or "[w]here the award is imperfect in matter of form").

specifically states that a modification or correction can be made under that subsection "***unless it is a matter not affecting the merits of the decision upon the matter submitted***." (Emphasis added.) By Plaintiffs' own admission, the modification requested relates to a matter not affecting the merits of the arbitrator's decision; therefore, relief is inappropriate under this statutory provision. Therefore, in order to prevail on this argument, Plaintiffs must show their entitlement to vacatur of the award under § 10(a)(4) on the grounds that the arbitrator's decision was "completely irrational" by "fail[ing] to draw its essence from the agreement."

"The scope of the arbitrator's authority is determined by the contract requiring arbitration as well as by the parties' definition of the issues to be submitted in the submission agreement." Schoenduve Corp. v. Lucent Technologies, Inc., 442 F.3d 727, 732 (9th Cir. 2006). Here, it is indisputable that, under the operative contractual provisions requiring arbitration, the arbitrator had broad authority to fashion the appropriate and necessary relief in the dispute between the parties. (See, e.g., Doc. No. 64 Exh. B at p.342 ("***Any dispute, controversy, or question*** arising under, out of or relating to this Agreement or the breach thereof . . . shall be submitted . . . for arbitration . . . ." (emphasis added)); see also Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co., 44 F.3d 826, 831 (9th Cir. 1995) ("Because the parties' arbitration clause does not limit the [arbitration] panel's power to resolve issues presented to it, the panel had the authority to settle and determine the dispute appropriately.").) Although the issues actually submitted for arbitration may affect the breadth of the arbitrator's authority, "[t]he scope of the arbitrator's jurisdiction [also] extends to . . . all issues ***implicit*** within the submission agreement." Schoenduve, 442 F.3d at 733 (emphasis added).

Although the issue presented to the arbitrator here may have been framed by Plaintiffs as a question of whether Defendants infringed on Plaintiffs' training manuals when viewed as a whole, it appears that an analysis of the individual components of those manuals was implicitly called for as part of the resolution of that question. As the Mattel Court explained:

> To distinguish between permissible lifting of ideas and impermissible copying of expression, we have developed a two-part "extrinsic/intrinsic" test. At the initial "extrinsic" stage, we examine the similarities between the copyrighted and challenged works and then determine whether the similar elements are protectable or unprotectable. . . . When the unprotectable elements are "filtered"

out, what's left is an author's particular expression of an idea, which most definitely *is* protectable.

Mattel, Inc. v. MGA Entm't, Inc., 616 F.3d 904, 913 (9th Cir. 2010) (emphasis in original). As part of the initial filtering process, the arbitrator was required to "use analytic dissection to determine the scope of copyright protection before works are considered 'as a whole.'" Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994) (emphasis added). In other words, the extrinsic/intrinsic test specifically contemplates an analysis of the individual elements of a work as part of determining if the work is protected as a whole. Thus, as Defendants correctly point out, the arbitrator's determination that neither the ValuePrompter form nor the QP Formula was entitled to copyright protection was clearly within his power to make as an issue implicit in, and indeed a necessary incident to, the dispute submitted to him for resolution. Therefore, the arbitrator's findings were not "completely irrational" within the meaning of § 10(a)(4).

## IV. CONCLUSION

For the reasons set forth above, the court hereby DENIES Plaintiffs' motion to vacate, modify, or correct the arbitration award (Doc. No. 64), and GRANTS Defendants' cross-petition to confirm the award (Doc. No. 63). In addition, the court DENIES Defendants' motion to strike as moot. (Doc. No. 66.)

**IT IS SO ORDERED.**

DATED: June 23, 2011

Hon. Jeffrey T. Miller
United States District Judge