1

2

3

4

5

6

7

8

9

10

11

12

13

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VALUESELLING ASSOCIATES, LLC, a California limited liability company; and SALES VISION, LLC, a California limited liability company, | CASE NO. 09-CV-1493-JM (AJB) **ORDER GRANTING DEFENDANTS' MOTION FOR ATTORNEYS' FEES AS MODIFIED** |

14

15

16                                    Plaintiffs,

17          v.

18   KEVIN TEMPLE, an individual; ENTERPRISE
     SELLING GROUP, form of entity unknown;
19   and DOES 1 through 50, inclusive,

20                                    Defendants.

21          Plaintiffs ValueSelling Associates, LLC ("VSA") and Sales Vision, LLC ("SVL") filed the

22   instant suit in federal court on July 9, 2009 against Defendants Kevin Temple and Enterprise Selling

23   Group ("ESG"), alleging various causes of action related to Plaintiffs' purchase of certain trademarked

24   and copyrighted materials from Defendants and the subsequent dissolution of the working relationship

25   between the parties. (Doc. No. 1.) After Defendants successfully moved to compel arbitration in the

26   matter, the parties submitted their dispute to an arbitrator, who issued a final award in favor of

27   Defendants. Plaintiffs then brought a motion to vacate, modify, or correct the arbitration award, which

28

09cv1493

1   was denied. (Doc. No. 75.) Defendants now move the court to recover attorneys' fees and costs incurred

2   in connection with confirming their arbitration award. (Doc. No. 77.)

3   **I.     BACKGROUND**

4        Plaintiffs are the owners of certain trademarked and copyrighted materials comprising a sales

5   training process known as the ValueSelling Program. (Doc. No. 1, "Complaint," ¶¶ 11, 35, 37-41.)

6   Plaintiffs initially signed a contract to acquire the ValueSelling Program from Defendant Temple and his

7   co-owners (the "Purchase Agreement") in June 2003, as part of which Temple was permitted to continue

8   training businesses on the ValueSelling methodology as a licensee (the "License Agreement"). (Id.

9   ¶¶ 36-42.)  Temple also agreed to remain on as an independent consultant to SVL for the next three

10  years (the "Consultancy Agreement"). (Id. ¶ 43.)  However, a dispute arose between Plaintiffs and

11  Temple in July 2007, and the parties agreed to a settlement that would terminate their relationship (the

12  "Settlement Agreement"). (Id. ¶¶ 47-48.)  Plaintiffs nevertheless brought suit against Temple and

13  ESG—a company that Temple formed in 2007—on July 9, 2009, claiming that Defendants had

14  misappropriated Plaintiffs' trade secrets and infringed upon certain of Plaintiffs' intellectual property

15  rights. (Id. ¶¶ 51-64.)

16        On September 3, 2009, Defendants moved for an order compelling Plaintiffs to submit their

17  dispute to arbitration and dismissing the case. (Doc. No. 4.) Defendants' motion was based on the

18  arbitration clauses contained in the Purchase Agreement, Consultancy Agreement, and Settlement

19  Agreement. (Id.)  On November 5, 2009, the court granted Defendants' motion and dismissed the case.

20  (Doc. No. 11.)

21        Plaintiffs subsequently commenced arbitration proceedings against Defendants on January 5,

22  2010. Defendants in turn filed several counterclaims against Plaintiffs. The arbitration proceeded over

23  the course of the next year, and on January 6, 2011, the arbitrator issued his Interim Award, concluding

24  that Defendants had not infringed on any of Plaintiffs' copyrights. The arbitrator's Final Award was

25  issued on March 16, 2011, affirming the substance of the Interim Award.

26        Plaintiffs then filed a motion in this court to vacate, modify, or correct the arbitrator's Final

27  Award. (Doc. No. 64.) Defendants opposed this motion, and filed a cross-petition to affirm the Award,

28  as well as a motion to strike certain portions of the arbitration hearing transcript filed by Plaintiffs. (Doc.

09cv1493

1   Nos. 63 & 66.)  The court ultimately affirmed the arbitration award and issued an order denying

2   Plaintiffs' motion, granting Defendants' cross-petition, and denying Defendant's motion to strike as

3   moot. (Doc. No. 75.) Defendants now bring a motion to recover for attorneys' fees and costs incurred in

4   connection with litigating these various motions. (Doc. No. 77.) Plaintiffs oppose Defendants' motion.

5   (Doc. No. 82.)

6   **II.     DISCUSSION**

7          There appears to be no contention over the fact that Defendants are entitled to recover attorneys'

8   fees based on the court's affirmation of the Final Award. Rather, the parties' disagreement centers on

9   what amount is "reasonable" under the circumstances.

10          In California, "[i]t is well settled that a trial court is vested with wide discretion in fixing the

11   amount to be awarded to a prevailing party for attorneys' fees." Rogel v. Lynwood Redevelopment

12   Agency, No. B219626, 2011 WL 1632038 at *1 (Cal. Ct. App. May 2, 2011). In making this

13   determination, the court

14                  ordinarily begins with the "lodestar," i.e., the number of hours reasonably
                    expended multiplied by the reasonable hourly rate. . . . The reasonable
15                  hourly rate is that prevailing in the community for similar work. The
                    lodestar figure may then be adjusted, based on consideration of factors
16                  specific to the case, in order to fix the fee at the fair market value for the
                    legal services provided. Such an approach anchors the trial court's
17                  analysis to an objective determination of the value of the attorney's
                    services, ensuring that the amount awarded is not arbitrary.
18
       PLCM Grp. v. Drexler, 22 Cal. 4th 1084, 1095 (2000).
19

20          Here, Defendants request a total of $49,096.06 in fees. (Doc. No. 77-1 p.1.)  This figure includes

21   the expense of both opposing Plaintiffs' motion and filing Defendants' own cross-petition ($28,950.30)

22   and bringing the motion to strike ($10,629.61), as well as the costs associated with the instant motion for

23   fees ($5,754.15). (Id. at pp. 13-14.)

24          According to Defendants, three attorneys and a legal assistant from the law firm of Sheppard,

25   Mullin, Richter & Hampton LLP ("Sheppard Mullin") all contributed their efforts to litigating this stage

26   of the case. (Id. at pp. 6-8.) The qualifications of each are set forth in great detail in Defendants' motion.

27   (Id.)  Lead counsel Robert S. Gerber is a partner at Sheppard Mullin with approximately 22 years of

28

09cv1493

1   experience as a litigator. His work on this case was billed at a rate of $527.25 per hour.[1]   Associates

2   Bram Hanono and Travis Anderson also worked on the case, respectively billing at $270.75 and $256.50

3   per hour. Finally, legal assistant Nancy Johnson assisted in preparing and filing the briefs in this matter.

4   Her work is billed at a rate of $118.75 per hour.

5       Defendants rely on various industry reports from PricewaterhouseCoopers and the American

6   Intellectual Property Law Association, which have surveyed law firms comparable to Sheppard Mullin

7   in size and field of practice within the San Diego or greater Southern California areas. (Id. at pp. 9-10.)

8   According to Defendants, for each of the four legal employees involved in their case here, the rates

9   charged by Sheppard Mullin are either at or below the median rates for individuals with the same levels

10  of experience.

11      The requested fee award was arrived at using a straightforward calculation of the number of

12  hours expended by each individual, multiplied by their respective billing rates.[2]

13      Plaintiffs object to Defendants' fee request on three grounds. First, they argue that Defendants'

14  motion to strike was unnecessary and frivolous.  Therefore, they request that Defendants' fee award not

15  include the time spent on it.[3] Second, Plaintiffs claim that Defendants' request for fees on the instant

16  motion is excessive. They characterize the fees request as a "straightforward motion largely consist[ing]

17  of unjustified and graciously-spaced text that has been cut and pasted from previous attorneys' fees

18  motion [sic] in the underlying arbitration." (Doc. No. 82 at 6.)  In addition, Plaintiffs point out that in

19  this court's previous order granting Defendants' motion for attorneys' fees for their successful motion to

20

21      [1]  Defendants allege that all of the billing rates charged by Sheppard Mullin here are actually below their current levels

22  because rates in this case were frozen at their 2009 levels, and Defendants were given an additional 5% discount.

23      [2] There appears to be an error in the calculation of Mr. Anderson's fees. Although Sheppard Mullin claims to have only
    billed his work at a rate of $256.50 per hour, the actual billed amounts charged for his work show that Defendants were actually

24  billed at $270 per hour—presumably Mr. Anderson's 2009 rate *before* the 5% discount allegedly applied ($270 x 0.95 = $256.50).
    (See Doc. No. 77 Exh. E.) The calculations as modified to correct this error result in a new total of $48,867.06 in fees.

25      [3]  Plaintiffs also argue that Sheppard Mullin spent a total of 48.6 hours, and not 37.0 hours, on the motion to strike, such

26  that the fee request should be reduced by more than the amount claimed by Defendants. (Doc. No. 82 pp. 5-6.) However, as
    Defendants correctly note, Plaintiffs appear to include in their calculation entire blocks of time that were only partially spent
    working on the motion to strike. For example, on May 16, 2011, Mr. Hanono billed 1.3 hours of work on this case, but during

27  that time worked on both drafting Defendants' reply brief on the motion to strike as well as reviewing Plaintiffs' reply brief on
    their motion to vacate. (See Doc. No. 77 Exh. E p.4.) However, Plaintiffs counted this entire 1.3 hour period towards the total

28  number of hours spent on the motion to strike. (Doc. No. 82 p.6.)

09cv1493

1  compel arbitration, the court found that the fees motion itself should have required no more than six

2  hours of work. Therefore, Plaintiffs request that Defendants only be permitted to recover for six hours of

3  work here as well. Finally, Plaintiffs claim that the hourly rates charged by Defendants are

4  unreasonable.  Plaintiffs cite to a different Southern District of California case in which $350 per hour

5  was deemed a reasonable rate for an attorney with 29 years of experience in complex civil litigation.

6  Indeed, this is the hourly rate granted by this court in its previous order.[4]  Plaintiffs claim that $350 per

7  hour is therefore also a reasonable rate for Mr. Gerber's hours. Further, because $350 is approximately

8  two-thirds of the rate Mr. Gerber actually charged, Plaintiffs also argue that Mr. Hanono and Mr.

9  Anderson's rates should also be reduced by the same proportion, to $178.69 and $169.29,[5] respectively.

10  According to Plaintiffs' calculations, Defendants are entitled to only $20,370.41 in fees.

11  **III.   CONCLUSION**

12      Based on the evidence provided, the court finds Defendants' fee calculation, including the rates

13  and the amount of work performed, reasonable under the circumstances.  For that reason, the

14  Defendants' motion is GRANTED AS MODIFIED in footnote 2.   Defendants shall recover $48,867.06.

15      **IT IS SO ORDERED.**

16  DATED:  October 21, 2011

17  _____
   Hon. Jeffrey T. Miller
18  United States District Judge

---

24      [4]  The court notes, however, that Defendants were represented by different counsel in bringing that motion to compel
25  arbitration and its related motion for fees. Ravin Glovinsky, LLP, was a small, local, two-person firm, while Sheppard Mullin is
   a large firm with offices throughout the country. In addition, the qualifications of the counsel involved in bringing each motion
26  appear to be quite different.

27      [5] Plaintiffs appear to have simply multiplied Mr. Hanono and Mr. Anderson's actual rates by 0.66 to obtain these figures.

28                                                        09cv1493
                              5